**JOHNSON & JOHNSON,**
**Plaintiff–Appellant,**

v.

**CARTER–WALLACE, INC.,**
**Defendant–Appellee.**

No. 1253, Docket 80–7318.

United States Court of Appeals,
Second Circuit.

Argued June 12, 1980.
Decided Sept. 25, 1980.

Thomas C. Morrison, New York City (David F. Dobbins, Christine H. Miller, Frederick J. Baumann, Roger S. Fine, Patterson, Belknap, Webb & Tyler, New York City, of counsel), for plaintiff–appellant.

Stephen R. Lang, New York City (Paul J. Weiner, Robert S. Getman, Breed, Abbott & Morgan, New York City, of counsel), for defendant–appellee.

Before LUMBARD and MANSFIELD, Circuit Judges.*

MANSFIELD, Circuit Judge:

Johnson & Johnson ("Johnson"), manufacturer of Johnson's Baby Oil and Johnson's Baby Lotion, appeals from a judgment of the United States District Court for the Southern District of New York, entered by Judge Constance Baker Motley, dismissing at the end of the plaintiff's case during a non–jury trial its suit for injunctive relief brought under § 43(a) of the Lanham Act,[1]

---

\* Honorable William O. Mehrtens, Senior District Judge for the Southern District of Florida, sitting by designation, participated in the hearing of this appeal. Judge Mehrtens voted in favor of the disposition herein made, but due to his subsequent illness and death did not have an opportunity to review this opinion. Accordingly the appeal is being disposed of by the other two judges as provided in Second Circuit Rule § 0.14.

1. Section 43(a) of the Lanham Trade–Mark Act, 15 U.S.C. § 1125(a), provides:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with

15 U.S.C. § 1125(a), against Carter–Wallace ("Carter"), the manufacturer of NAIR, a leading depilatory product. Because we believe Johnson's showing on the required elements of its false advertising claim was sufficient to withstand a motion to dismiss, we reverse and remand for further proceedings.

Johnson's claim arises out of Carter's use of baby oil in NAIR and its advertising campaign regarding that inclusion. In 1977, Carter added baby oil to its NAIR lotion and initiated a successful advertising campaign emphasizing this fact. NAIR is sold in a pink plastic bottle with the word "NAIR" written in large, pink letters. A bright turquoise–blue banner, open at both ends, contains the words "with baby oil." In addition to its packaging of NAIR, Carter's television advertisements emphasize that NAIR contains baby oil.[2]

Alleging (1) that Carter is making false claims for NAIR with baby oil and (2) that it is packaging and advertising NAIR so as to give consumers the false impression that NAIR is a Johnson & Johnson product, plaintiff filed the instant suit for injunctive relief under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under New York's common law of unfair competition. Section 43(a) of the Lanham Act provides for two separate causes of action: one is for "false designation of origin," the other for a "false description or representation, including words or symbols tending falsely to describe or represent" the product. Johnson's false representation claim alleges that Carter's "NAIR with baby oil" campaign falsely represents to consumers that the baby oil in NAIR has moisturizing and softening effect on the skin of the user. While recognizing that Carter's advertising makes no explicit claims for its product, Johnson alleges that this claim is implicit in the manner in which NAIR has been marketed. It contends that these false claims have unfairly dissuaded consumers from using its products in favor of NAIR with baby oil.

Johnson's application for a temporary restraining order was denied by the district court, as was its motion for a preliminary injunction. The motion for a preliminary injunction was denied in a memorandum order dated August 15, 1979, D.C., 487 F.Supp. 740, in which the district court found that plaintiff had failed to make the requisite showing for either its false designation of origin claim or its false advertising claim.

The bench trial of the suit was conducted from March 31, 1980 to April 7, 1980. Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the parties relied upon previous testimony and evidence presented at the preliminary injunction hearing. Although plaintiff offered no new evidence on its false designation of origin claim, it did present new testimony and evidence on the false advertising claim. At the close of plaintiff's case, the trial court granted defendant's motion to dismiss the action. Plaintiff appeals from the dismissal of its false advertising claim under § 43(a). The propriety of the dismissal of its false designation of origin claim is not raised on appeal.

In dismissing Johnson's false advertising claim, the trial court did not reach either

knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

2. The court has viewed samples of Carter's television advertisements. Carter's commercials all featured several young women dancing and singing while dressed in clothing that revealed their legs. A typical audio portion of these commercials is as follows:

"Who's got Baby Oil?
Nair's got Baby Oil.
If you're a baby goil, Nair with Baby Oil.
Nair with Baby Oil.
It takes off the hair . . .
so your legs feel baby–smooth.
And Nair's baby–soft scent . . .
smells terrific, baby.
Who's got Baby Oil?
Nair's got Baby Oil.
Soft–smelling Nair with Baby Oil.
Nair, for baby–smooth legs."

the question of whether Carter advertises or implies in its advertising that baby oil as an ingredient in NAIR has a moisturizing and softening effect, or the issue of whether such a claim is false. Instead, its dismissal was "granted on the ground that [Johnson] failed to carry its burden of proving damage or the likelihood of damage." Just what that burden is and what evidence will satisfy it, are the central issues in this appeal.

## DISCUSSION

Prior to the enactment of § 43(a) of the Lanham Act, false advertising claims were governed by the common law of trade disparagement. Under the common law, liability was generally confined to "palming–off" cases where the deceit related to the origin of the product. *Ely–Norris Safe Co. v. Mosler Safe Co.*, 7 F.2d 603 (2d Cir. 1925), *revd. on other grounds*, 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578 (1926); 2 McCarthy, *Trademarks and Unfair Competition*, § 27:1 at 242 (1973). In these cases the offending product was foisted upon an unwary consumer by deceiving him into the belief that he was buying the plaintiff's product (normally an item with a reputation for quality). Other instances of false advertising were safe from actions by competitors due to the difficulty of satisfying the requirement of proof of actual damage caused by the false claims. In an open market it is normally impossible to prove that a customer, who was induced by the defendant through the use of false claims to purchase the product, would have bought from the plaintiff if the defendant had been truthful.

■ The passage of § 43(a) represented a departure from the common law action for trade disparagement and from the need to prove actual damages as a prerequisite for injunctive relief. This departure marked the creation of a "new statutory tort" intended to secure a market–place free from deceitful marketing practices. *L'Aiglon Apparel v. Lana Lobell, Inc.*, 214 F.2d 649, 651 (3d Cir. 1954); *Bose Corp. v. Linear*

*Design Labs, Inc.*, 467 F.2d 304, 311 (2d Cir. 1972). The new tort, as subsequently interpreted by the courts, differs from the common law action for trade disparagement in two important respects: (1) it does not require proof of intent to deceive, and (2) it entitles a broad range of commercial parties to relief. See, *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232, 236 (2d Cir. 1974); *L'Aiglon Apparel, supra*, 214 F.2d at 651.

■ The broadening of the scope of liability results from a provision in § 43(a) allowing suit to be brought "by any person who believes that he is or is likely to be damaged by the use of any false description or representation." 15 U.S.C. § 1125(a). Whether this clause is viewed as a matter of standing to sue, see, *Potato Chip Institute v. General Mills*, 333 F.Supp. 173, 179 (D.Neb.1971), *affd.*, 461 F.2d 1088 (8th Cir. 1972), or as an element of the substantive claim for relief, certain bounds are well established. On the one hand, despite the use of the word "believes," something more than a plaintiff's mere subjective belief that he is injured or likely to be damaged is required before he will be entitled even to injunctive relief. See, *Chromium Industries v. Mirror Polishing & Plating*, 448 F.Supp. 544, 554 (N.D.Ill.1978); *D.M. Antique Import Corp. v. Royal Saxe Corp.*, 311 F.Supp. 1261, 1269 n. 6 (S.D.N.Y.1970). On the other hand, as the district court in this case recognized, a plaintiff seeking an injunction, as opposed to money damages, need not quantify the losses actually borne. What showing of damage in between those two extremes will satisfy the statute is the subject of the instant dispute.

Johnson claims, in effect, that once it is shown that the plaintiff's and the defendant's products compete in a relevant market and that the defendant's ads are false, a likelihood of damage sufficient to satisfy the statute should be *presumed* and an injunction should issue "as a matter of course."[3] The district court, in contrast,

---

**3.** Specifically, Johnson alleges that it has suffered a loss in sales of Baby Lotion and Baby

Oil and also a tarnishment of the reputation of these products due to Carter's alleged false

drew the line as follows: "Of course, J&J [Johnson] need not quantify its injury in order to obtain injunctive relief. But J&J must at least prove the existence of some injury caused by Carter." The court had said that "J&J has failed to prove that its loss of sales was in any way *caused* by NAIR's allegedly false advertising."

■ Both the case law and the policy behind § 43(a) indicate that the district court's construction of the statute placed too high a burden on the plaintiff in this case. To require a plaintiff to "prove the existence of some injury caused by" the defendant, is to demand proof of actual loss and specific evidence of causation. Perhaps a competitor in an open market could meet this standard with proof short of quantified sales loss, but it is not required to do so. The statute demands only proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising. The correct standard is whether it is *likely* that Carter's advertising has caused or will cause a loss of Johnson sales, not whether Johnson has come forward with specific evidence that Carter's ads actually resulted in some definite loss of sales. *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir. 1958); *Ames Publishing Co. v. Walker–Davis Publications, Inc.*, 372 F.Supp. 1, 13 (E.D.Pa.1974); 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 27:5 at 249–50 (1973). Contrary to Johnson's argument, however, the likelihood of injury and causation will not be presumed, but must be demonstrated. If such a showing is made, the plaintiff will have established a reasonable belief that he is likely to be damaged within the meaning of § 43(a) and will be entitled to injunctive relief, as distinguished from damages, which would require more proof. We believe that the evidence offered by Johnson, though not overwhelming, is sufficient to prove a likelihood of damage from loss of sales.

■ Initially, we find that Johnson has shown that it and Carter are competitors in

a relevant market. Although Johnson's Baby Oil and Lotion do not compete with NAIR in the narrower depilatory market, they do compete in the broader hair removal market. NAIR is used for hair removal by depilation. Johnson's Baby Lotion has been promoted as a substitute for shaving cream and is used for removal of hair by shaving. Also, both of Johnson's products are used as skin moisturizers after shaving or after the use of depilatories. Such indirect competitors may avail themselves of the protection of § 43(a); the competition need not be direct. *Rare Earth Inc. v. Hoorelbeke*, 401 F.Supp. 26, 39 (S.D.N.Y. 1975); *Chromium Industries, supra*, 448 F.Supp. at 554. Moreover, Carter's advertising campaign itself, by its emphasis on baby oil, directly links the depilation and the moisturizer markets. Johnson's stake in the shaving market gives it a "reasonable interest to be protected against the alleged false advertising." 1 R. Callman, *Unfair Competition, Trademarks and Monopolies*, § 18.2(b) at 625 (3d ed. 1967).

To prove a likelihood of injury Johnson must also show a logical causal connection between the alleged false advertising and its own sales position. This it has done with specific evidence. It has shown that large numbers of consumers in fact use its baby lotion for shaving and its baby oil as an after–shave and after–depilation moisturizer. Carter's "NAIR with baby oil" campaign affects both markets. First, NAIR's share of the hair removal market has increased since its baby oil advertising began. For each new depilatory user, a corresponding decline in the use of shaving products such as oils and lotions appears probable. Second, the use of baby oil after depilation is likely to be reduced if, as Johnson contends, Carter's advertising conveys to consumers the idea that NAIR's baby oil has a moisturizing and softening effect and leads the consumer to believe that use of a second, post–depilation, moisturizer is unnecessary. Of course, if Carter's ads are truthful, then its gains at Johnson's ex-

---

advertising. The district court rejected Johnson's tarnishment theory of damage and we

believe that this rejection was not clearly erroneous.

pense are well earned. If false, however, the damage to Johnson is unfair.

Johnson's case is supported by more than just the above logic. First, sales of its baby oil have in fact declined. Second, a consumer witness testified at trial that she switched from use of baby oil by shaving to NAIR because it was advertised as containing baby oil. Third, Johnson introduced surveys indicating that some people, after viewing NAIR ads, thought they would not have to use baby oil if they used NAIR. Together, Johnson's evidence was enough to prove a likelihood of competitive injury resulting from the NAIR advertising.

■ That much of the decline in Johnson's Baby Oil sales may be due to competition from lower priced baby oils, does not save Carter. In *Donsco Inc. v. Casper Corp.*, 587 F.2d 602, 607 (3d Cir. 1978), for example, the court found that "the decline in Donsco's [the plaintiff's] sales is largely attributable to increased competition from lower–priced competitors and to Donsco's slow delivery of its [product]." Although it refused to award damages, it upheld the grant of an injunction. Further, the possibility that the total pecuniary harm to Johnson might be relatively slight does not bar injunctive relief. See *Ames Publishing Co., supra*, 372 F.Supp. at 13.

■ Finally, Johnson's inability to point to a definite amount of sales lost *to Carter* (a failure which would bar monetary relief) does not preclude injunctive relief. Likelihood of competitive injury sufficient to warrant a § 43(a) injunction has been found in the absence of proof of actual sales diversion in numerous cases. See *American*

*Home Products Corp. v. Johnson & Johnson,* 436 F.Supp. 785 (S.D.N.Y.1977), *affd.,* 577 F.2d 160 (2d Cir. 1978); *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.,* 567 F.2d 154 (1st Cir. 1977); *Potato Chip Institute, supra; Parkway Baking Co., supra; American Brands, Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352 (S.D.N.Y.1976); *Ames Publishing Co., supra; Mutation Mink Breeders Assn. v. Lou Nierenberg Corp.,* 23 F.R.D. 155 (S.D.N.Y.1959). Although the overall likelihood of harm to the plaintiff from the defendant's ads in some of these cases was perhaps greater than here, e. g., *American Home Products Corp., supra* (defendant's false advertising disparaged plaintiff's product); *Quabaug Rubber Co., supra* ("palming off" of shoe soles by defendant to create impression they were made by plaintiff); *American Brands Inc., supra* (suit by cigarette manufacturer based on defendant's claim that its cigarettes had "the lowest tar of all cigarettes"), there was little or even no evidence of any actual sales losses to the defendant. Moreover, in other of the above cases granting injunctive relief despite the absence of proof of any specific loss attributable to the false advertising, the likelihood of damage was no greater than it is in this case. See, e. g., *Ames Publishing Co., supra,* 372 F.Supp. at 12;[4] *Potato Chip Institute, supra,* 333 F.Supp. at 179; *Mutation Mink, supra,* 23 F.R.D. at 161 ("The plaintiffs did not monopolize the industry and proof of actual diversion of trade was, therefore, in all practical respects, impossible.... [T]he 'likely to be damaged' provision of § 43(a) obviates the necessity of proving actual diversion of trade.")

4. In *Ames Publishing* the court found no proof of actual diversion of trade from the plaintiffs to the defendants.

"Other than a showing of a diminution of units of advertising sold for the current year, plaintiffs have not shown any reliance by advertisers on the false representations nor have they shown that the primary cause of their loss of advertising was due to the false claims of defendants. In fact, there is a distinct lack of any testimony on this record provided by either party from independent advertisers in the field." 372 F.Supp. at 12. Nonetheless, the court granted an injunction:

"In actions under Section 43(a) of the Lanham Act, as previously indicated, a plaintiff need not show he was actually damaged by the false representations of defendant, but need only show a likelihood of damage. *Parkway Baking Co. v. Freihofer Baking Co., supra.* We have heretofore concluded that plaintiffs have made the requisite showing, and where such a showing is made, injunctive relief under Section 43(a) of the Lanham Act may be granted even where pecuniary injury to the plaintiff may be slight." 372 F.Supp. at 13.

Neither *Mutation Mink* nor *Potato Chip Institute* can be discounted as "palming-off" cases. The advertising claims made by the defendants in those two cases tended to create the impression that their products were either genuine mink or genuine potato chips, respectively. But these are both generic terms. False generic description of a product is very different from a false designation of origin which trades on a particular competitor's goodwill, as in *Quabaug Rubber*. Conveying a false impression that the product *is* a certain generic item is no more likely to divert trade than conveying a false impression that additional *use* of a generic product is unnecessary. The latter deceit is the type alleged by Johnson.

Sound policy reasons exist for not requiring proof of actual loss as a prerequisite to § 43(a) injunctive relief. Failure to prove actual damages in an injunction suit, as distinguished from an action for damages, poses no likelihood of a windfall for the plaintiff. The complaining competitor gains no more than that to which it is already entitled—a market free of false advertising.

While proof of actual diversion of sales is not required for a § 43(a) injunction to issue, proof that the advertising complained of is in fact false is essential. This issue, though briefed by parties in this case, is not before the court at this time. The district court did not reach the question for purposes of determining whether permanent relief should issue. Since the action was dismissed at the close of the plaintiff's case, Carter was afforded no opportunity to introduce additional evidence answering the plaintiff on this point. Johnson, having shown that it is likely to be damaged by Carter's advertising, must prove that the NAIR advertising was false before being entitled to injunctive relief under the Lanham Act. Should the district court find that the defendant's advertising conveys a false message, irreparable injury for the purpose of injunctive relief would be present for the very reason that in an open market it is impossible to measure the exact amount of Johnson's damages. See *Quabaug Rubber, supra,* 567 F.2d at 161; *Ames Publishing, supra,* 372 F.Supp. at 13; *Geisel v. Poynter Products,* 283 F.Supp. 261 (S.D.N.Y.1968).

Accordingly, this cause is reversed and remanded for further proceedings in conformity with this opinion.[5] We retain jurisdiction.

---

**5.** The record discloses strong evidence, including Carter's internal documents, admissions of its chief executive, independent expert opinion, and consumer surveys, that Carter's advertising of "NAIR with baby oil," some of which we viewed upon argument, is perceived as informing the public that the baby oil in NAIR has moisturizing benefits, leaving the skin smoother and softer than it would be without the oil. See *American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160 (2d Cir. 1978); *American Brands, Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352 (S.D.N.Y.1976). Indeed, from our review of the record and viewing of the NAIR advertisements the purpose and effect of the latter clearly appears to have been to lead consumers to believe that if they used NAIR with baby oil they would gain benefits from the product in the form of a moisturizing or softening effect not realized when baby oil is absent. Upon remand, therefore, the essential issue will be whether the presence of baby oil in NAIR does in fact have such a moisturizing or softening effect.