### ORTHO PHARMACEUTICAL CORPORATION, Plaintiff– Appellant,

v.

### COSPROPHAR, INC., Defendant– Appellee.

No. 1137, Docket 93–7936.

United States Court of Appeals, Second Circuit.

Argued March 18, 1994.

Decided Aug. 12, 1994.

---

Thomas C. Morrison, New York City (Andrew D. Schau, Patterson, Belknap, Webb & Tyler, Madonna M. Malin, Johnson & Johnson, of counsel), for plaintiff-appellant.

Stuart A. Smith, New York City (I. Scott Bass, Piper & Marbury, Alfred Ferrer III, Diane C. McEnroe, of counsel), for defendant-appellee.

Before: MAHONEY, WALKER, and SPROUSE,* Circuit Judges.

WALKER, Circuit Judge:

This appeal arises from a suit brought by Ortho Pharmaceutical Corporation ("Ortho"), the manufacturer of two products effective for treating skin aged by exposure to the sun, seeking to enjoin Cosprophar, Inc.

---

* Honorable James M. Sprouse, of the United States Court of Appeals for the Fourth Circuit, sitting by designation.

("Cosprophar") from advertising that its cosmetics have an "anti-aging effect" or are otherwise effective at diminishing wrinkles and other signs of sun damage. Ortho appeals from a judgment of the United States District Court for the Southern District of New York (Charles H. Tenney, *Judge*), entered after a bench trial, dismissing Ortho's complaint on the basis that Ortho failed to establish standing under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1993), and failed to show that Cosprophar's advertising misled consumers and therefore violated §§ 349 and 350 of the New York General Business Law. *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 828 F.Supp. 1114 (S.D.N.Y.1993). This appeal requires us to decide what evidence a plaintiff suing under § 43(a) of the Lanham Act must submit to demonstrate that its interests were or will likely be damaged by another business's allegedly false or misleading advertising. We hold that since Ortho's products are not obviously in competition with Cosprophar's, Ortho was required to submit proof demonstrating that consumers view Cosprophar's cosmetics as a comparable substitute for Ortho's drugs. Because Ortho failed to do so, and because Ortho failed to submit sufficient proof on its state law claims, we affirm the judgment of the district court.

## BACKGROUND

Ortho is an American corporation that manufactures prescription drugs. One of its products is RETIN–A, which contains tretinoin, also known as transretinoic acid, a chemical form of Vitamin A. The Food and Drug Administration ("FDA") classifies RETIN–A as a drug and has approved it only for the treatment of acne. The Federal Food, Drug, and Cosmetic Act's definition of the term "drug" includes "articles (other than food) intended to affect the structure or any function of the body...." 21 U.S.C. § 321(g)(1)(C).

In January 1988, an article was published in the Journal of the American Medical Association ("JAMA") recommending tretinoin for the treatment of photodamaged skin. Photodamage refers to the changes caused in an individual's skin as a result of exposure to the sun. It is characterized by wrinkling, sallowness of color, increased coarseness, and irregular pigmentation. Photodamage is sometimes called "photoaging," to be distinguished from "intrinsic aging" which is the inevitable aging process that occurs over time in accordance with a person's genetic characteristics. The 1988 JAMA article sparked widespread media coverage in daily newspapers and news magazines and was the subject of a feature story on network television the day it was published.

In the wake of the publicity surrounding tretinoin, prescriptions for RETIN–A increased dramatically. Sales of the product increased from $40 million in 1987 to $100 million in 1988. Because the FDA has not approved RETIN–A for the treatment of photodamaged skin, Ortho is barred by law from promoting it for this purpose. *See* 21 U.S.C. §§ 321(m), 331(a), 331(*l*), 352(a), and 355(a). Nonetheless, the FDA permits doctors to prescribe drugs for "off-label" uses. Ortho estimates that approximately 45% of its current RETIN–A sales are attributable to public demand for the drug as an answer to photoaging.

In addition to its off-label sales of RETIN–A, Ortho has developed a new tretinoin-based drug, RENOVA, aimed specifically at treating sun-damaged skin. Ortho has spent $75 million on research and development of RENOVA and another $25 million on developing marketing support for it. Ortho currently is awaiting FDA action on its New Drug Application submitted in 1989 seeking approval of RENOVA as a drug safe and effective for the treatment of photodamaged skin.

In 1988, Cosprophar, an Italian-based corporation organized under the laws of New York, began distributing a new line of cosmetics to the United States market under the name ANTI–AGE RETARD. Cosprophar subsequently introduced several related lines of cosmetics, bearing the names ANTI–AGE HYDRATE, ANTI–AGE RETARD LIPOSOME, ANTI–AGE SUPER, ANTI–AGE SUPER LIPOSOME, ANTI–AGE SPECIAL, and ANTI–AGE COLOUR. Each line includes several products, the prices of which range from $23 to $440.

Many of Cosprophar's products contain retinyl acetate or retinyl palmitate. The first of these is a combination of retinol, which is the naturally occurring form of Vitamin A, and acetic acid. The latter is a combination of retinol and palmitic acid. These chemical combinations are classified by the FDA as "cosmetic" ingredients. The Federal Food, Drug, and Cosmetic Act defines the term "cosmetic" as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance...." 21 U.S.C. § 321(i)(1).

Cosprophar's cosmetics were introduced into the United States market by a series of advertisements discussing the recent publicity surrounding transretinoic acid and its usefulness in treating photodamaged skin. The advertisements stated that the ANTI–AGE cosmetics contain "retinol," a chemical which "belongs to the same family" as transretinoic acid and is similarly "effective[ ] in reducing wrinkles." They also indicated that the main distinction between retinol and transretinoic acid is that "[r]etinol is used as a cosmetic, whereas transretinoic acid is used as a drug and can cause reddening and irritation." As proof of the cosmetics' efficacy, the advertisements referred to studies by a Professor Puschmann of the Hamburg Clinic of Experimental Dermatology in Germany which demonstrated that Cosprophar's cosmetics "visibly reduced the number and depth of wrinkles" in tests "carried out ... on men and women between 22 and 43 years old."

Cosprophar styled its advertisements as "advertorials," which are newspaper and magazine advertisements that are formatted in the same style as news articles and are placed adjacent to news items. As the district court noted, the advertorial format was designed "to enhance the seriousness and credibility of [Cosprophar's] advertising." 828 F.Supp. at 1118 n. 8. In line with this marketing scheme, Cosprophar sold its products only through pharmacies. Instead of deploying its own retail staff, Cosprophar trained the sales staff of the pharmacies about its products and also provided them with product bulletins containing technical and marketing information.

In 1991, Ortho brought this suit alleging two claims under § 43(a) of the Lanham Act and two claims under §§ 349 and 350 of the New York General Business Law. As relief, Ortho sought an injunction barring Cosprophar from selling cosmetics under any of the ANTI–AGE names and from distributing advertisements stating that the ANTI–AGE products (1) contain retinol or "super retinol," (2) have an "anti-aging effect," (3) are effective for diminishing wrinkles or other effects of photoaging, and (4) have been proven reliable by scientific evidence for diminishing wrinkles or other effects of photoaging.

The case proceeded to a one-week bench trial before Judge Tenney. At the close of Ortho's case, Cosprophar moved to dismiss on the basis that Ortho did not have standing under the Lanham Act and did not demonstrate that Cosprophar's advertising was materially misleading as required under the state law claims. The district court reserved decision. After receiving post-trial briefs, Judge Tenney issued an opinion denying Ortho's request for an injunction and dismissing its complaint. On the Lanham Act claims, Judge Tenney ruled that Ortho lacked standing because it failed to establish (a) that it had a protectable interest in either its off-label sales of RETIN–A or its future sales of RENOVA, and (b) that Cosprophar's advertising was causing or would likely cause it injury. On the state law claims, Judge Tenney ruled that Ortho failed to show that Cosprophar's advertising was materially misleading to consumers. This appeal followed.

## DISCUSSION

In reviewing a judgment entered after a bench trial, we accept the district court's findings of fact unless they are clearly erroneous and review the district court's legal conclusions de novo. See A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd., 927 F.2d 713, 716 (2d Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 183, 116 L.Ed.2d 144 (1991); Fed. R.Civ.P. 52(a); accord Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 594 (2d Cir.

1993) (discussing standard of review of dismissal for lack of standing).

## I. Lanham Act Claims

■ Section 43(a) of the Lanham Act as amended provides in relevant part, that:

(1) Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

\*      \*      \*      \*      \*      \*

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). In order to establish standing to sue under this statute, a plaintiff must demonstrate a "reasonable interest to be protected" against the advertiser's false or misleading claims, *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir.1984), and a "reasonable basis" for believing that this interest is likely to be damaged by the false or misleading advertising, *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir.1982). *See also Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir.1980). The "reasonable basis" prong embodies a requirement that the plaintiff show both likely injury and a causal nexus to the false advertising.

Although Judge Tenney ruled that Ortho had not satisfied its burden on either ground, we turn first to his decision that Ortho failed to demonstrate a "reasonable basis" to believe that it is likely to be injured by Cosprophar's advertising since we find this issue to be dispositive. We will assume for the purposes of our discussion that Ortho has a protectable interest in its off-label sales of RETIN–A and in its future sales of RENO–VA.

This circuit has adopted a flexible approach toward the showing a Lanham Act plaintiff must make on the injury and causation component of its claim. We have held that, while a plaintiff must show more than a "subjective belief" that it will be damaged, it need not demonstrate that it is in direct competition with the defendant or that it has definitely lost sales because of the defendant's advertisements. *Coca–Cola Co.*, 690 F.2d at 316; *see also Johnson & Johnson*, 631 F.2d at 190. However, we have also maintained that "[t]he likelihood of injury and causation will not be presumed, but must be demonstrated in some manner." *Coca–Cola Co.*, 690 F.2d at 316; *see also Johnson & Johnson*, 631 F.2d at 190. The type and quantity of proof required to show injury and causation has varied from one case to another depending on the particular circumstances. On the whole, we have tended to require a more substantial showing where the plaintiff's products are not obviously in competition with defendant's products, or the defendant's advertisements do not draw direct comparisons between the two. *Compare McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir.1988) (district court did not err by presuming harm after finding that advertisement for over-the-counter pain reliever made misleading comparison to specific competing product) *with Johnson & Johnson*, 631 F.2d at 190 (requiring manufacturer of baby oil to show indication of actual injury and causation when seeking to enjoin non-comparative commercial for depilatory); *see also Coca–Cola*, 690 F.2d at 316 n. 2 (noting that plaintiff in *Johnson & Johnson* was required to prove the element of competition because its product was "not obviously competing ... for the same consumer dollars").

■ Here, the district court found that "Ortho and Cosprophar are not in direct competition given the nature of their products: one is a drug requiring a doctor's prescription, the other is a cosmetic available in a pharmacy." 828 F.Supp. at 1124. Without disputing this finding, Ortho claims that it will be harmed by Cosprophar's advertising in three ways. First, it asserts that consumers who currently buy Cosprophar's cosmetics consequently will not buy RETIN–A. Second, it claims that consumers who are

dissatisfied with Cosprophar's cosmetics will be discouraged from buying Ortho's products in the future. Third, it claims that consumers who like Cosprophar's cosmetics will continue to purchase them and will thus have no occasion to try either RETIN–A or RENO-VA. As proof of this injury, Ortho relies solely on (a) Cosprophar's advertisements, and (b) statements made by a Cosprophar employee that its cosmetics were introduced to take advantage of the publicity surrounding transretinoic acid. The able district judge determined that this evidence was insufficient to establish that Ortho would likely be injured by Cosprophar's conduct. We agree.

The missing link in Ortho's proof is evidence that Cosprophar's advertising will have the effect on consumers that Ortho says it will—in other words, that consumers will see Cosprophar's cosmetics as substitutes for Ortho's drugs. In other cases, this link has been supplied by consumer surveys or consumer witnesses. For example, in *Johnson & Johnson,* a case upon which Ortho places much reliance, the plaintiff introduced market surveys indicating that some consumers thought they would not have to use the plaintiff's product (baby oil) if they used defendant's product (a depilatory which claimed to contain baby oil) and testimony from a consumer witness who stated that she switched from using plaintiff's baby oil to using defendant's depilatory because of defendant's advertisement. 631 F.2d at 191.

The significance of this consumer evidence was highlighted in our subsequent *Coca–Cola* decision, where we observed that:

> Two recent decisions of this Court have examined the type of proof necessary to satisfy [the requirement that injury and causation must be demonstrated, not presumed. *Vidal Sassoon, Inc. v. Bristol-Myers Co.,* 661 F.2d 272 (2d Cir.1981); *Johnson & Johnson v. Carter-Wallace, Inc.,* 631 F.2d 186 (2d Cir.1980) ]. ... In both decisions the Court reasoned that sales of the plaintiffs' products would probably be harmed if the competing products' advertising tended to mislead consumers in the manner alleged. Market studies were used as evidence that some consumers

were in fact misled by the advertising in issue. Thus, the market studies supplied the causative link between the advertising and the plaintiffs' potential lost sales, and thereby indicated a likelihood of injury.

690 F.2d at 316–17 (footnotes omitted). Applying the same reasoning, the *Coca–Cola* court concluded that two market tests submitted by plaintiff Coca–Cola adequately established that consumers would likely be misled by the defendant's advertising and that Coca–Cola's sales would be detrimentally affected. 690 F.2d at 317.

In this case, the district court warned Ortho prior to trial that there was a deficiency in its proof. In the course of denying a motion for summary judgment brought by Cosprophar, the then-presiding judge, Judge Cedarbaum, told counsel for Ortho that "[i]t seems to me that you do not have standing and you cannot show that your sales are affected by the defendant's sales unless the people who buy defendant's product are aware that your product is an option." She added that she "was puzzled, to tell you the truth, as to why you have not a single survey of consumers, because we are now on the eve of trial."

At trial, and again as part of its post-trial submissions, Ortho unsuccessfully attempted to introduce three market research surveys into evidence. Judge Tenney rejected this proffer because Ortho failed to show that the surveys were properly conducted and that they were business records within the meaning of Fed.R.Evid. 803(6). *See Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.,* 758 F.Supp. 512, 524 (E.D.Mo.1991) (outlining the requirements of a "properly conducted" survey), *aff'd in part, rev'd in part on other grounds,* 989 F.2d 985 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 338, 126 L.Ed.2d 282 (1993). Judge Tenney further noted that even if admissible, the surveys did not establish a causal link between Cosprophar's advertisements and any damage claimed by Ortho because they merely corroborated the undisputed fact that consumers were aware of the alleged benefits of RETIN–A and did not address "alternative skin-care treatments, alternative prod-

ucts, or specifically, defendant's products." 828 F.Supp. at 1125 n. 13.

Ortho does not challenge the district court's ruling excluding its surveys. Instead, it argues that it was not required to submit evidence of consumer perceptions because Cosprophar's advertisements draw comparisons to Ortho's drugs and therefore supply the necessary link between the two companies' products. Ortho points to excerpts from Cosprophar's advertisements which discuss the publicity regarding transretinoic acid and indicate that Cosprophar's retinol-based cosmetics are superior for the treatment of photoaged skin because they have no side effects. Specifically, Cosprophar's advertisements state that "interest in retinol in Europe reached very high levels after the discovery at a prominent University of the anti-wrinkle potential of transretinoic acid" with a citation to the 1988 JAMA article; that interest in anti-wrinkle products "is only partially met by two other products available on the market," one of which is "the dermatologist-prescribed anti-acne treatments based on retinoic acid"; and that "[u]sers of transretinoic acid ... complained of reddening and irritation while these effects have never been noted with the use of retinol in anti-wrinkle treatment." Ortho acknowledges that Cosprophar's advertisements refer to transretinoic acid, not specifically to RETIN–A or RENOVA, but argues that it is unnecessary to submit proof that consumers identify the ingredient in their products by its scientific name. Ortho also argues that a witness for Cosprophar admitted that the company tried to link its products to Ortho's drugs because she conceded that the ANTI–AGE RETARD line of cosmetics was introduced in 1988 in part "to tap into ... consumer interest in anti-aging products" and that Cosprophar took "advantage of the publicity, of the transretinoic acid."

For support of its advertisement-linkage analysis, Ortho relies on the decisions in *Johnson & Johnson* and *Upjohn Co. v. Riahom Corp.*, 641 F.Supp. 1209 (D.Del.1986). However, both cases are distinguishable. In *Johnson & Johnson*, this court relied on the linkage in defendant's advertising between its product and plaintiff's product as proof that plaintiff had a "reasonable interest to be protected against the alleged false advertising." 631 F.2d at 190. In order to find that plaintiff had established a likelihood of injury, the court looked not only at the advertisements but also at plaintiff's market research indicating that the advertisements led consumers to believe that they would no longer need plaintiff's product. Thus, *Johnson & Johnson* does not establish that advertising-linkage alone is sufficient proof of injury.

The *Upjohn* case is no more helpful. In that case, the defendant's advertisements did not simply compare its products to plaintiff's products; they expressly incorporated materials relating to plaintiff and its research in such a manner as to suggest that defendant's product was associated with plaintiff. The court determined that this use of plaintiff's publicity was adequate proof of an injury because of the possibility of false attribution. Such a danger does not exist in this case. Ortho argues, however, that the *Upjohn* court also found injury based solely on the false claims in defendant's advertising without any reference to consumer research. To the extent this is true, the *Upjohn* court appeared to supply the missing link by presuming that defendant's false claims would adversely affect plaintiff's sales. *See* 641 F.Supp. at 1225 (stating that defendant's false claims "definitely tend to induce consumers to purchase their product, thereby depriving [plaintiff] of potential customers and sales"). While there may be room for such a presumption in cases where there is a question of false designation of goods, our circuit has expressly disfavored presumptions of harm in cases where the products are not obviously in competition or where the defendant's advertisements make no direct reference to any competitor's products. *See McNeilab, Inc.*, 848 F.2d at 38; *Coca–Cola Co.*, 690 F.2d at 316; *Johnson & Johnson*, 631 F.2d at 190.

Under the standards of this Circuit, Ortho has failed to present sufficient evidence to establish that it will likely be damaged by Cosprophar's conduct. While Cosprophar's advertisements draw comparisons to the active ingredient in Ortho's drugs, their substance is not sufficient to establish that Ortho

has standing to pursue a Lanham Act claim. Ortho has not shown that consumers see Cosprophar's cosmetics as a substitute for either RETIN–A or RENOVA. Without such proof, it would be just as reasonable to believe that consumers who buy Cosprophar's cosmetics will also buy Ortho's drugs or, alternatively, that the type of consumer who buys Cosprophar's over-the-counter products is not the type who would seek out a prescription drug. Because consumer behavior is unpredictable, and because of the general rule in our Circuit against making presumptions of injury and causation favorable to the plaintiff, we affirm the district court's decision dismissing Ortho's Lanham Act claims for lack of standing.

## II. The State Law Claims

■ Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business." N.Y.Gen.Bus.Law. § 349. Section 350 prohibits "[f]alse advertising in the conduct of any business." N.Y.Gen.Bus.Law § 350. In order to establish a claim under either section, a plaintiff must show "(i) that the act or practice was misleading in a material respect, and (ii) that the plaintiff was injured." *Coors Brewing Co. v. Anheuser–Busch Cos.,* 802 F.Supp. 965, 975 (S.D.N.Y.1992); *see also McDonald v. North Shore Yacht Sales, Inc.,* 134 Misc.2d 910, 913, 513 N.Y.S.2d 590, 593 (N.Y.Sup.Ct.1987). The district court dismissed Ortho's state law claims because Ortho did not submit evidence indicating that consumers were misled by Cosprophar's advertising and therefore failed to demonstrate the first element of its claims. The court also noted that Ortho did not address the state law claims in its post-trial briefs and could be deemed to have abandoned them.

Without addressing its waiver problem, Ortho argues that it was not required to submit market research of consumer confusion because it proved that Cosprophar's advertisements were false on their face. We note that the district court made no findings about the truth or falsity of Cosprophar's advertisements. However, even if we assume that Ortho carried its burden on this point, and that New York courts would ac-

cept a demonstration of falsity in lieu of a demonstration that Cosprophar's advertisements were "misleading in a material respect," Ortho's state law claims must still be dismissed because it failed to show that it suffered any injury as a result of Cosprophar's advertisements. As explained in our discussion of the Lanham Act claims, Ortho has not shown that consumer selection of its products was adversely affected by Cosprophar's advertisements; in addition, Ortho has not challenged the district court's finding that it "showed no damages whatsoever." 828 F.Supp. at 1125 & n. 14 (rejecting Ortho's testimony regarding lost sales as "speculative and vague"). Because Ortho failed, at a minimum, to establish proof of the second element of its case under §§ 349 and 350, we affirm the district court's dismissal of its state law claims.

## CONCLUSION

The judgment of the district court is affirmed.