LIVINGSTON, Circuit Judge,
concurring in part and dissenting in part:
I join in Parts I, II, and IV of the majority opinion, including Part IPs analysis of Famous'Horse’s false endorsement claims under sections 32 and 43 of the Lanham Act. I disagree, however, with the majority’s conclusion that Famous Horse’s additional claim under Section 43(a), based on Appellees’ asserted sale of counterfeit jeans bearing the Rocawear label, alleged a “reasonable interest” to be protected under the Lanham Act. I believe that this claim is best assessed under the prudential standing framework first employed in the trademark context by the Third Circuit in Conte Brothers Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221 (3d Cir.1998), and since adopted by several other circuits for use in assessing standing in Lanham Act cases, see Phoenix of Broward, Inc. v. McDonald’s Corp., 489 F.3d 1156 (11th Cir. 2007); Procter & Gamble Co. v. Amway Corp., 242 F.3d 539 (5th Cir.2001). Use of the Conte Brothers framework is consistent with this Court’s precedent requiring a Lanham Act plaintiff to allege a “reasonable interest” to be protected in order to have standing, and in my view provides a reviewing court with useful guidance in assessing whether such a reasonable interest has been alleged. While I do not read the majority’s analysis in Part III as foreclosing adoption of the Conte Brothers test by this Court in a future case, I find that application of it here leads me to a different conclusion as to whether the interest alleged in this case constitutes a “reasonable interest” under our past precedents sufficient for standing under the Lanham Act. Accordingly, I respectfully dissent from Part III of the majority’s opinion. * * *
Section 43(a) of the Lanham Act provides, in relevant part:
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person’s goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a). Subsection (A) protects against the “infringement of even unregistered marks, names, and trade dress” (sometimes described as a prohibition of “false association”) while subsection (B) prohibits “false advertising.” See Telecom Int’l America, Ltd. v. AT & T Corp., 280 F.3d 175, 196-97 (2d Cir.2001) (using “false association” and “false advertising” descriptors); see also Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc., 926 F.2d 134, 139 (2d Cir.1991) (characterizing Section 43(a) as involving “product infringement” and “false advertising” claims). As indicated, section 43(a) writ large gives “any person who believes that he or she is likely to be damaged” the right to sue, and the standing provision *117 does not distinguish between the two subsections.
As the majority observes, courts have universally construed section 43’s conferral of standing to “any person who believes that he or she is or is likely to be damaged” more narrowly than the words “any person” in isolation might suggest. See, e.g., Colligan v. Activities Club of New York, Ltd., 442 F.2d 686, 691-92 (2d Cir. 1971) (understanding the Lanham Act as “protecting] the interests of a purely commercial class against unscrupulous commercial conduct,” id. at 692, and denying standing under the Act to purportedly injured consumers). With the exception of a single outlying case, this Court has repeatedly indicated that the test for standing in Lanham Act false advertising cases is whether the plaintiff has both “(1) a reasonable interest to be protected against [the defendant’s] false or misleading claims, and (2) a reasonable basis for believing that this interest is likely to be damaged by the [defendant’s] false or misleading advertising.” ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 169 (2d Cir. 2007) (internal quotation marks omitted); accord Societe Des Hotels Meridien v. LaSalle Hotel Operating P’ship L.P., 380 F.3d 126, 130 (2d Cir.2004); Havana Club Holding, S.A. v. Galleon S.A., 203 F.3d 116, 130 (2d Cir.2000), PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1111 (2d Cir. 1997); Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir.1994); PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 125 (2d Cir.1984); Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 190 (2d Cir.1980).[4]
In Conte Brothers, the Third Circuit considered the question whether the plaintiff retailers of motor oil had standing to bring suit against the manufacturer of a product that competed with those sold by the retailers. Specifically, the retailers alleged that advertisements by the manufacturer, Quaker State, contained false and misleading statements regarding the qualities of its Slick 50 engine additive, resulting in lost motor oil sales by the retailers. Conte Bros., 165 F.3d at 223-24. In considering what test for prudential standing applied in the case, the court first observed that (as in this Circuit) Third Circuit precedent required a plaintiff to demonstrate a “reasonable interest to be protected” in order to have standing to bring a Lanham Act false advertising *118 claim, though it noted that since adopting this standard, the circuit’s “subsequent decisions ha[d] carried forward this prudential ‘reasonable interest’ requirement [while] grappl[ing] with defining the term with greater precision.” Id. at 230-31.
In endeavoring to give its reasonable interest test greater structure, the Conte Brothers court found valuable guidance in the test for antitrust standing described by the Supreme Court in Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).[5] It noted that Associated General set forth five factors for a court to consider in assessing whether prudential standing requirements [6] had been satisfied:
(1) The nature of the plaintiff’s alleged injury: Is the injury of a type that Congress sought to redress ... ?
(2) The directness or indirectness of the asserted injury.
(3) The proximity or remoteness of the party to the alleged injurious conduct.
(4) The speculativeness of the damages claim.
(5)The risk of duplicative damages or complexity in apportioning damages.
Conte Bros., 165 F.3d at 233 (citing Associated General, 459 U.S. at 538, 540, 542, 543-44, 103 S.Ct. 897) (internal quotation marks and citations omitted).
Applying these factors to the case before it, the court held that the plaintiffs had failed to meet the requirements of standing. It had already rejected the notion that, under the Lanham Act, “only direct competitors or their surrogates have standing.” Id. at 231 (emphasis in original); see also id. at 231-32. Noting then that “there may be circumstances in which a non-competitor may have standing to sue,” it emphasized that in this case, while the plaintiffs had alleged a commercial injury, their injury was not a competitive harm — that is, their ability to compete had not been hindered, as would have been the case if the defendant’s actions had tarnished their professional reputation or otherwise damaged the good will they enjoyed from customers- — and the harm suffered was therefore not of the kind Congress had sought to redress. Id. at 234 (noting that “the type of injury suffered by Appellants — loss of sales at the retail level ...— *119 does not impact the Appellants’ ability to compete ” (emphasis added)). Moreover, the plaintiffs were relatively remote from the alleged harmful conduct, and “the ‘existence of an identifiable class of persons’ — manufacturers of competing products — “whose self-interest would normally motivate them to vindicate the public interest ... diminishes the justification of allowing a more remote party ... to perform the office of a private attorney general.’” Id. (alteration in original) (quoting Associated General, 459 U.S. at 542, 103 S.Ct. 897). The court considered that the damages suffered by the plaintiffs, “were, if not speculative, then certainly avoidable,” since the plaintiffs themselves could have sold Slick 50, and so “the interest that plaintiffs had in preserving the reputation of motor oil ... appeared] to be a theoretical, rather than actual economic interest.” Id. at 235. “Finally, recognizing the right of every potentially injured party in the distribution chain to bring a private damages action would subject defendant firms to multiple liability for the same conduct and would result in administratively complex damages proceedings.” Id.
If every retailer had a cause of action for false advertising regardless of the amount in controversy, regardless of any impact on the retailer’s ability to compete, regardless of any impact on the retailer’s good will or reputation, and regardless of the remote nature of the injury suffered, the impact on the federal courts could be significant. For example, under Appellants’ theory, every corner grocer in America alleging that his sales of one brand of chocolate bars have fallen could bring a federal action against the manufacturer of another brand for falsely representing the chocolate content of its product. Such an action hardly seems befitting of a statute that was designed primarily to resurrect the federal tort of unfair competition after it was consigned to the post-Erie ashheap.

Id.

As noted above, two other circuits have found the analysis in Conte Brothers to be compelling, see Phoenix of Broward, 489 F.3d at 1167; Procter & Gamble, 242 F.3d at 562, and as the court in Conte Brothers itself indicated, the approach has the endorsement of two prominent commentators, see 165 F.3d at 233 (citing 4 McCarthy on Trademarks § 27.32 n. 1; Restatement (Third) Unfair Competition § 3, cmt. f (1995)). I also believe Conte Brothers to be well-reasoned, and think that use of its framework would enable this Circuit, like the Third, Fifth, and Eleventh, to “defin[e] the term [reasonable interest] with greater precision.” Conte Bros., 165 F.3d at 231. Here, consideration of the five factors leads me to disagree with the majority that Famous Horse has standing to assert a Lanham Act claim for unfair competition.
First, as to the nature of the alleged injury, Famous Horse in this case has alleged both commercial injury — in the form of lost sales as the result of the sale of counterfeit jeans by its competitors, supplied to them by the Appellees — -and competitive harm — in that V.I.M.’s reputation as the place to go for discount genuine designer jeans is undercut by the availability of less expensive and seemingly genuine designer jeans from those competitors. These allegations are sufficient to put the alleged injury squarely within the category of harm that the Lanham Act is designed to remedy, and thus the first Conte Brothers factor favors standing.[7]
*120 The inquiry under the second Conte Brothers factor, which considers the relative directness or indirectness of the asserted injury, dovetails nicely with this Court’s existing precedent, which holds, as the majority indicates, that direct competition is not a requirement for Lanham Act standing, but that “we have tended to require a more substantial showing where the plaintiffs products are not obviously in competition with defendant’s products.” Ortho Pharm., 32 F.3d at 694. The majority states that in this case “Famous Horse and Appellees are in essence competitors.” Maj. Op. at 113. However, as the majority recognizes, Famous Horse sells its jeans at retail, whereas the Appellees sell primarily at the wholesale level. Certainly, it is possible for parties operating at different market levels to nevertheless be in competition, as is reflected in the antitrust context. E.g., Info. Res., Inc. v. Dun & Bradstreet Corp., 294 F.3d 447, 450 (2d Cir. 2002) (citing a hypothetical situation discussed in a leading antitrust treatise in which one manufacturer engages in anti-competitive conduct against another manufacturer through the actions of retail dealers that it controlled in its vertically integrated business structure). However, in this case there is little reason to think that Famous Horse and Appellees are “competitors in every relevant economic sense.” Id. (quoting II Phillip E. Areeda et a!., Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 348fl, at 404 (2d ed. 2000)). Indeed, making such a claim may be particularly difficult here where Famous Horse brings a claim against Appellees that they sold counterfeit jeans to Famous Horse among other retailers, and where Famous Horse’s other Lanham Act claim alleges that Appellees asserted to other retailers that Famous Horse was a “satisfied customer” of their allegedly counterfeit jeans. See Maj. Op. at 109.
Where a plaintiff and defendant are in competition, the defendant’s misrepresentations as to the qualities of their products represent the archetypal form of unfair competition, with a potential for harm that is both obvious and direct. See Logan v. Burgers Ozark Country Cured Hams Inc., *121 263 F.3d 447, 460 (5th Cir.2001) (indicating that the second Conte Brothers factor favors standing when “one competitor directly injuries] another by making false statements about its own goods and thus influencies] customers to buy its product instead of the competitor’s product” (citing Procter & Gamble, 242 F.3d at 563)). Given the lack of a direct competitive relationship here, however, the alleged injury is both significantly less obvious and more indirect. According to Appellant’s theory, Appellees allegedly harmed Famous Horse not by misrepresenting the nature of their allegedly counterfeit jeans to customers who would otherwise have purchased from Appellant, but by inducing third-party retailers to purchase and sell Appellees’ counterfeit jeans as if they were genuine examples of the Rocawear brand and to do so at a lower price than Appellant charges for its genuine product, resulting in the lost business and reputational effects Famous Horse claims. Because the asserted injury here is indirect, I conclude that the second factor in the Conte analysis weighs against Appellant’s position.
With respect to the third factor, Famous Horse’s proximity to the allegedly injurious conduct, it is clear that in this case there is a party more proximately affected than Famous Horse by the Appellees’ alleged dealing in counterfeit Rocawear jeans — namely, the owner of the Rocawear label — whose self-interest will lead it to respond to unfair competition taking the form of misuse of its trademark. Indeed, Famous Horse’s Amended Complaint alleges that it was initially alerted to the counterfeit nature of the Appellees’ products when contacted by Rocawear’s attorneys. I am unpersuaded, moreover, by the majority’s suggestion that Famous Horse is similarly situated to the plaintiffs we found to have standing in PPX Enterprises, who owned a legal interest entitling them to royalties from Jimi Hendrix recordings, and who consequently could claim they were harmed by any sale of recordings that were falsely attributed to the artist, wherever it occurred. See 746 F.2d. at 125 (observing that “[e]very time a record in which [plaintiffs] have a royalty interest is sold, they earn money; every time a sale is lost to a competitor, they lose potential profit”). Plaintiffs here cannot claim an equivalent level of interest with respect to Rocawear jeans in general. The “unique harm” they claim is a reputation with respect to the quality of their products in general and the prices charged, one that in theory a number of retailers could claim to have in some form and one that is not directly connected to the conduct that is allegedly violative of the Lanham Act. The plaintiffs in PPX Enterprises accordingly were significantly more proximate to the alleged injurious conduct in that case than Famous Horse is here. I conclude that the third Conte Brothers factor disfavors standing.
The fourth factor considers the speculativeness of a plaintiffs damages claim. The majority acknowledges that “V.I.M. stores operate in a large market” and that “the alleged harm to Famous Horse depends upon the idea that its sales are specifically affected by Appellees’ behavior,” an effect that may be difficult to prove. Maj. Op. at 114-15. As a previous case applying the Conte Brothers analysis to Lanham Act standing has recognized, the presence of many competitors in a given market may render the alleged damages caused by a particular defendant’s actions more speculative. See Phoenix of Broward, 489 F.3d at 1171 (finding alleged damages speculative even when the defendant and plaintiff were direct competitors). It is true that this case does not, as in Conte Brothers, involve a claim for damages that “if not speculative, were certainly avoidable.” 165 F.3d at 235. Unlike *122 the motor oil retailers in Conte Brothers, who could have sold Slick 50 themselves and thereby avoided any loss of sales to that competing product, see id., Famous Horse could not properly have responded to the sale of counterfeit jeans by its competitors by joining them in the counterfeit trade. However, Famous Horse’s second theory of injury for this claim — that it will be harmed because the ability of other competitors to sell counterfeit jeans advertised as genuine at lower prices than the genuine jeans sold by Famous Horse will give it a reputation for inflated prices — is certainly both highly speculative and indeed in some tension with other theories of harm advanced by Famous Horse at different stages of the litigation. Thus, I conclude that the speculativeness of damages weighs against Famous Horse as well, if perhaps not to the degree found in Conte Brothers.
The final Conte Brothers factor, the risk of duplicative or complex damages, also weighs against Appellant. The market affected in this case is, as previously noted, a “large mai'ket that includes luxury retailers selling name brands at full price [and] discounters of various stripes,” Maj. Op. at 115, and all of these actors, plus Rocawear, and perhaps even the makers of competing brands of designer jeans, might plausibly claim that the Appellees’ counterfeiting causes them commercial injury. Beyond lost sales that it would seem all such market participants might be able to claim, Famous Horse claims that its stores’ “alleged reputation as a discount purveyor of genuine brand-name jeans,” Maj. Op. at 111, was harmed. However, other discounters, and perhaps even luxury retailers, might reasonably claim that counterfeiting causes them competitive harm, in that the sale of counterfeits make their jeans seem overpriced, and thereby damages their reputations. The threat of complex or duplicative damages is somewhat attenuated in this case, which involves a local rather than a national market, and a theory of competitive injury that turns upon the plaintiffs purportedly unique market position. See Phoenix of Broward, 489 F.3d at 1172 (noting that in addition to “the plaintiffs position in the distribution chain relative to the defendant,” courts considering the fifth Conte Brothers factor “also have assessed the risk of duplicative damages by examining the number of potential claimants in the same position in the distribution chain as the plaintiff’ (citing Joint Stock Soc’y v. UDV N. Am., Inc., 266 F.3d 164, 184-85 (3d Cir.2001); Procter & Gamble, 242 F.3d at 564)). Nevertheless, permitting standing here does raise a similar specter of granting standing to every retailer with a bare claim of commercial injury that the Third Circuit in Conte Brothers found intolerable, see 165 F.3d at 235, only now -with the addition of a highly speculative claim as to harm suffered due to a unique position in the market.
The majority finds a “reasonable interest” in this case based on the alleged “lost sales and a unique harm to the specific reputation of V.I.M. stores.” Maj. Op. at 114. Although the Conte Brothers factors do not uniformly weigh against standing, making the question of whether a “reasonable interest” is shown in this case a close one, I conclude that, on balance, they emphasize the tenuousness of Famous Horse’s Lanham Act claim for unfair competition and support a conclusion that Famous Horse does not have standing to bring it. The competitive relationship between Famous Horse and Appellees is at best unclear, although Famous Horse does allege injuries from the Appellees’ actions that are both commercial and competitive in nature. Even if the relationship could be termed “nominally competitive,” however, again following Conte Brothers, I *123 find decisive “the existence of more directly injured parties, the tenuousness of Appellants’ damages claims, and the possibility of multiple recoveries.” Conte Bros., 165 F.3d at 225. Here, the owner of the Rocawear label is significantly more proximate than Famous Horse to the injurious conduct alleged, the claim that Famous Horse has been damaged by the introduction of counterfeit jeans into the local market in which it operates is highly speculative with respect to reputation and potentially still quite speculative in the context of the claim for lost sales, and finally the risk of duplicative and complex damages again exists here, particularly with respect to the claim for lost sales. Ultimately, I do not think the principles of prudential standing counsel hearing the claim of a party whose only distinguishing feature from any other retailer of a counterfeited good is a speculative one as to harm to its purported reputation.
For the foregoing reasons, I conclude that Famous Horse does not have standing to bring its unfair competition claim, and dissent from Part III of the Court’s opinion on these grounds.

. In Telecom International, 280 F.3d at 197, the Court, without discussion, cited the standard employed by the Seventh, Ninth, and Tenth Circuits rather than that described by our prior precedent. The test employed by those three circuits requires that the plaintiff ‘‘be a competitor of the defendant and allege a competitive injury” in false advertising cases, as distinguished from false association cases. See id. (citing Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 873 (10th Cir.1995); L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc., 9 F.3d 561, 575 (7th Cir.1993); Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1109 (9th Cir. 1992)). As the majority notes, our case law otherwise indicates that while competition between the plaintiff and defendant is significant to a determination of whether a plaintiff has a "reasonable interest” conferring standing, see, e.g., Ortho Pharm., 32 F.3d at 694 ("[W]e have tended to require a more substantial showing where the plaintiff’s products are not obviously in competition with defendant’s products, or the defendant’s advertisements do not draw direct comparisons between the two.”), competition is not the "sine qua non of standing” in this Circuit, Maj. Op. at 112-13. See also Ortho Pharm., 32 F.3d at 694 (We have held that, while a plaintiff must show more than a subjective belief that it will be damaged, it need not demonstrate that it is in direct competition with the defendant or that it has definitely lost sales because of the defendant’s advertisements.”); Berni v. Int'l Gourmet Rests, of Am., Inc., 838 F.2d 642, 648 (noting similarly that "a section 43 plaintiff need not be a direct competitor” of the defendant); accord Havana Club Holding, 203 F.3d at 130.

. Before adopting the test from Associated General, the Conte Brothers court expressly rejected the Ninth Circuit’s approach to standing in Section 43(a) cases — which provided separate and distinct standing tests for the subsection’s two prongs — observing, inter alia, that there was no textual support for differential treatment of false association claims brought under section 43(a)(1)(A) and false advertising claims brought under section 43(a)(1)(B). Conte Bros., 165 F.3d at 232-33.
I note that it is not clear to me whether Famous Horse’s unfair competition claim in this case is properly considered to be a false advertising claim, as the majority assumes, or a false association claim. Like the Third Circuit in Conte Brothers, however, I see no reason to distinguish between subsections 43(a)(1)(A) and (B) for standing purposes, and so tire analysis presented here is unaffected by the distinction.

. The determination whether prudential standing limits apply at all to a given statute ordinarily first entails an inquiry into whether Congress has expressly rejected such limitations in enacting the statute. See, e.g., Leibovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 186 (2d Cir.2001) (noting that "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules” (internal quotation marks omitted)). Given that this Circuit has already determined that Lanham Act standing is prudentially limited to those with a "reasonable interest to be protected,” I will not undertake this separate inquiry here, and note only that I find the reasoning of Conte Brothers on this point to be persuasive as well. See 165 F.3d at 227-30.

. I note that unlike the Third Circuit, this Circuit’s precedent has not focused as strong *120 ly on whether a plaintiff is alleged to have suffered a competitive harm in assessing standing under the Lanham Act. See, e.g., Punchgini, 482 F.3d at 169-70 (indicating that "[t]he ‘reasonable interest' prong of [this Circuit’s] test includes commercial interests, direct pecuniary interests, and even a future potential for a commercial or competitive injury” (emphasis added)); Berni, 838 F.2d at 648 ("... [Standing to bring a section 43 claim requires the potential for a commercial or competitive injury.” (emphasis added)). Given that this Circuit requires only that a plaintiff allege an actual or potential commercial harm, the "nature of the alleged injury” in this case is a fortiori within what we have determined to be the category of harms that Congress sought to redress under the Lanham Act.
I see no difficulty in adopting the factors of the Conte Brothers test to guide our prudential standing inquiry, while differing with the Third Circuit on the precise requirements of one or more of the factors. In declining to require a competitive injury with respect to the first factor, we would join the Eleventh Circuit:
[Defendant] ... contends that because [plaintiff] has neither alleged nor suggested that its reputation was adversely affected by [defendant’s] advertising, this lack of reputational injury counsels against prudential standing.... [W]e cannot say that the lack of alleged reputational injury, in and of itself, directs us to conclude that [plaintiff] has failed to allege the type of injury the Lanham Act was intended to redress.... [T]he Lanham Act is not only designed to protect against unfair erosion of a competitor’s reputation, it is also designed to protect commercial interests [that] have been harmed by a competitor’s false advertising.
Phoenix of Broward, 489 F.3d at 1168-69 (internal quotation marks omitted) (final alteration in original).