08-4523-cv
Famous Horse v. 5th Ave. Photo Inc. et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

October Term, 2009

(Argued: October 1, 2009                    Decided: October 21, 2010)

Docket No. 08-4523-cv

FAMOUS HORSE Inc., d/b/a/ V.I.M.,

*Plaintiff-Appellant,*

— v.—

5TH AVENUE PHOTO INC., M & B SUIT WAREHOUSE INC., ID-DEALZ, INC., MIKE BOUSKILLA, MOSHE BOUSKILLA,

*Defendants-Appellees,*

NJ FRENCH KISS, INC., FLORENTIN FASHIONS, INC.,

*Defendants.*

Before:

SACK, LIVINGSTON, and LYNCH, *Circuit Judges*.

Appellant, which operates a chain of stores in the New York area that it claims are

known for selling name-brand jeans and sneakers at low prices, alleges that Appellees

violated the Lanham Act by falsely claiming, in the course of marketing their jeans to

other clothing sellers, that Appellant was a satisfied customer. Appellant seeks review of an award of summary judgment in favor of Appellees entered in the Southern District of New York (William H. Pauley III, *Judge*).

VACATED AND REMANDED.

Judge Livingston files a separate opinion concurring in part and dissenting in part.

————————

CLIFFORD Y. CHEN, Watkins, Bradley & Chen LLP, New York, New York (Stephen E. Feldman, Feldman Law Group, P.C., New York, New York, *on the brief*), *for Plaintiff-Appellant*.

JEFFREY S. DWECK, The Law Firm of Jeffrey S. Dweck, P.C., New York, New York, *for Defendants-Appellees*.

————————

GERARD E. LYNCH, *Circuit Judge*:

Appellant Famous Horse, Inc., operates a chain of clothing stores in the New York area called V.I.M. that sell name-brand jeans and sneakers for relatively low prices. Appellees offered to supply several clothing stores, including V.I.M., with Rocawear brand jeans at a discounted price. After purchasing jeans from Appellees in 2006, V.I.M. discovered that the jeans were counterfeit and stopped selling them. Appellees, however, allegedly continued selling the counterfeit jeans to other clothing stores, and in the course of pursuing such sales told other potential customers that V.I.M. was a satisfied customer.

Famous Horse filed a complaint against Appellees in September 2007, and a

subsequent amended complaint in February 2008, asserting claims under § 32 and § 43(a) of the Lanham Act, as well as related state law claims. In May 2008, the district court dismissed Famous Horse's Lanham Act claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and declined to exercise jurisdiction over the remaining state law claims. Famous Horse twice sought leave to amend its complaint to remedy the district court's concerns, which the district court denied. The district court also dismissed the complaint against two defendants – N.J. French Kiss, Inc. and Florentin Fashions, Inc. – for failure to serve those defendants with the February 2008 amended complaint. This appeal followed.

**I. Standard of Review**

We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). We review the district court's denial of leave to amend a complaint for abuse of discretion. See, e.g., Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002).

**II. Lanham Act Trademark Infringement Claims**

The district court ruled that in order to plead a trademark infringement claim under § 32 of the Lanham Act, "a plaintiff must allege facts establishing, *inter alia*, that a defendant's use of plaintiff's registered mark is likely to cause confusion as to the source of a product," and that to plead a false endorsement claim under § 43(a), "a plaintiff must

demonstrate that there exists a likelihood of confusion between its product and the alleged infringer's product." Famous Horse Inc. v. 5th Ave. Photo Inc., No. 07 Civ. 7818 (WHP), 2008 WL 2156727, at *1 (S.D.N.Y. May 19, 2008) (internal quotation marks omitted). The court then concluded that because "Famous Horse fails to allege any facts establishing consumer confusion as to the source of its products," its Lanham Act claims failed. Id. After Famous Horse twice sought to amend its complaint, the district court found that the proposed amended complaints "recite[d] the same arguments" and "d[id] not cure the defects identified by the Court." The district court erred both in dismissing the amended complaint, and in denying Famous Horse leave to amend its complaint further.

It is true that a Lanham Act claim must be predicated on a likelihood of customer confusion. The consumer confusion triggering the Lanham Act, however, need not be solely as to the *origin* of the product. Confusion as to the origin of goods or services is indeed the basis for one type of Lanham Act claim. See 15 U.S.C. § 1125(a)(1)(A); see also, e.g., Standard & Poor's Corp., Inc. v. Commodity Exch., Inc., 683 F.2d 704, 708-09 (2d Cir. 1982) (holding that Commodity Exchange's proposed "Comex 500 Stock Index" violated the Lanham Act by tending to cause consumers to confuse the Comex 500 Stock Index and the Standard & Poor 500 Index). Neither § 32 nor § 43(a), however, speaks solely to confusion about the origin of goods or services. Famous Horse asserted claims arising under both § 32 and § 43(a).

4

*A. Section 43(a) False Endorsement Claim*

Section 43(a) specifically prohibits false or misleading representation producing many different types of consumer confusion. It prohibits the use in commerce of:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the *affiliation, connection, or association of such person with another person*, or as to the origin, *sponsorship, or approval of his or her goods, services, or commercial activities by another person*.

15 U.S.C. § 1125(a)(1) (emphasis added).

Section 43(a) thus specifically defines misrepresentation causing confusion as to affiliation, association, or sponsorship as infringing activity. A consumer "need not believe that the owner of the mark actually produced the item and placed it on the market" in order to satisfy § 43(a)'s confusion requirement. <u>Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.</u>, 604 F.2d 200, 204 (2d Cir. 1979). "The public's belief that the mark's owner *sponsored or otherwise approved* the use of the trademark satisfies the confusion requirement." <u>Id</u>. at 205 (emphasis added).

We have applied this principle specifically to claims that one company had falsely portrayed another as a satisfied customer. The defendant in <u>Courtenay Commc'ns Corp. v. Hall</u>, 334 F.3d 210 (2d Cir. 2003), had placed on its website plaintiff's trademark and a quotation, purportedly by the plaintiff company's President, praising the services

5

provided by the defendant.  Id. at 212.  We held that the plaintiff had sufficiently alleged false endorsement to overcome a motion to dismiss.  See id. at 214 n.1; see also Allen v. Nat'l Video, Inc., 610 F. Supp. 612, 617, 625-31 (S.D.N.Y. 1985) (finding Lanham Act violation based on portrayal in advertisement of a look-alike of plaintiff Woody Allen as "satisfied holder" of defendant's product).

Famous Horse brought a similar "satisfied customer" false endorsement claim here.  Famous Horse alleged in its complaint that "Defendants stated and implied to its customers and prospective customers, and [to] V.I.M.'s customers and potential customers, that V.I.M. was a satisfied customer of its Rocawear jeans."  In its amended complaint, Famous Horse repeated that the defendants "used the V.I.M. trademark to advertise that V.I.M. was a satisfied customer of its services and Rocawear jeans."  The amended complaint also explained that the defendants "falsely stated to customers, potential customers, suppliers and potential suppliers of both Defendants and Plaintiff, that Plaintiff is a satisfied customer of Defendants, and that they are associated with the marks."  Famous Horse therefore alleged in its complaint that Appellees used a "word, term, name, symbol," or a "false or misleading representation of fact, which is likely . . . to deceive as to the . . . sponsorship, or approval of [its] goods . . . by another person."  15 U.S.C. § 1125(a)(1)(A).

*B.  Section 32 Trademark Infringement*

Section 32, in contrast, does not prohibit causing confusion specifically as to

6

association or sponsorship of commercial activities. Rather, the language of § 32 is more general: it prohibits "us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" without defining the types of confusion that might be caused. 15 U.S.C. § 1114(1)(a). Nevertheless, Famous Horse expressly alleges that Appellees used its marks in connection with the false representation that it was a satisfied customer, a use that is plainly likely to deceive and create confusion and mistake regarding the relationship between Appellees' goods and services and Famous Horse. The complaint therefore adequately alleges a sufficient likelihood of confusion resulting from Appellees' actions under § 32.

*C. Use in Commerce*

Both § 32 and § 43(a) prohibit the "use in commerce" of a registered mark or false description of fact, respectively. The phrase "use in commerce" is defined in 15 U.S.C. § 1127, and distinguishes between uses in commerce that relate to goods and those that relate to services. See Rescuecom Corp. v. Google Inc., 562 F.3d 123, 139 (2d Cir. 2009). A mark is used in commerce on goods when "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale," and on services "when it is used or

7

displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127. Famous Horse does not claim that Appellees attached the V.I.M. mark to the goods they were selling. Famous Horse thus did not state a claim for trademark infringement under § 32 with respect to Appellees' sale of *goods*.

In the amended complaint, however, Famous Horse claims that Appellees "used the V.I.M. trademark to advertise that V.I.M. was a satisfied customer of its *services* and Rocawear jeans." (emphasis added.) By using the V.I.M. trademark in stating that V.I.M. was a satisfied customer of Appellees, Appellees attached the V.I.M. mark to claims about the services provided by Appellees.[1] Famous Horse therefore stated a valid claim under § 32 that Appellees used in commerce a "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising" of Appellees' services in a way that was "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).

In contrast, § 43(a) "goes beyond § 32 in making certain types of unfair competition federal statutory torts, whether or not they involve infringement of a registered trademark." Ives Labs., Inc. v. Darby Drug Co., 601 F.2d 631, 641 (2d Cir. 1979); see also Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 478 (2d Cir.

---

[1] We note, however, that although the present allegations are sufficient to survive a motion to dismiss, in order to prove the claim, Famous Horse must present evidence of what services the Appellees provided and subsequently advertised using the V.I.M. mark.

8

2005). Section 43(a) prohibits the use of a "word, term, name, symbol, . . . false or misleading description of fact, or false or misleading representation of fact, which is likely . . . to deceive as to the . . . sponsorship, or approval of [its] goods . . . by another person." 15 U.S.C. § 1125(a)(1)(A). We need not apply the § 1127 requirements regarding the use of marks to the false endorsement claim, therefore, and Famous Horse stated a valid claim under § 43(a).

*D. Conclusion*

We thus vacate the district court's dismissal of Famous Horse's false endorsement claims under § 32 alleging that Appellees used V.I.M.'s mark to claim that Famous Horse was a satisfied customer of Appellees' services, and under § 43(a) alleging that Appellees used V.I.M.'s mark to claim that Famous Horse was a satisfied customer of Appellees' goods *and* services.

**III. Lanham Act Unfair Competition Claims**

Famous Horse also alleges that Appellees competed unfairly in violation of § 43(a) of the Lanham Act by selling counterfeit Rocawear jeans.[2] Appellees argue that Famous

---

[2] Famous Horse's original complaint set forth only the false endorsement Lanham Act claim. Although the First Amended Complaint adds a claim for "unfair competition," its allegations do not set forth Famous Horse's "lost sales" theory, it does not expressly cite the Lanham Act, and it likely does not adequately state any viable claims for relief. Famous Horse twice proposed a Second Amended Complaint, however, clarifying its unfair competition claim as arising under the Lanham Act. The district court denied Famous Horse's motions to amend its complaint a second time based on its mistaken belief that the unfair competition claim in the proposed Second Amended Complaint

Horse cannot make an unfair competition claim based upon Appellees' misuse of the Rocawear trademark, which Famous Horse does not own. Famous Horse argues that it is injured in two ways by Appellees' misuse of the Rocawear mark: First, it loses sales of genuine Rocawear jeans to Appellees when customers purchase what they believe are also genuine Rocawear jeans from Appellees or from retailers who purchased from them. Second, customers will believe that Famous Horse is selling Rocawear jeans at an inflated price, devaluing V.I.M.'s alleged reputation as a discount purveyor of genuine brand-name jeans. We agree with Famous Horse that under the particular circumstances of this case, it has stated an unfair competition claim though it does not own the abused Rocawear mark.

The Lanham Act's language is extremely broad, stating that any person who uses "*any* false designation of origin, false or misleading description of fact, or false or misleading representation of fact" which is likely to cause confusion as to the origin or sponsorship of his or her goods or services "shall be liable in a civil action by *any person who believes that he or she is or is likely to be damaged by such act*." 15 U.S.C. § 1125(a) (emphasis added). Read literally, this language would confer standing upon virtually any plaintiff who claims any sort of injury from a misleading use of a trademark

simply restated the false endorsement claim that the district court erroneously dismissed. Its subsequent denials of Famous Horse's motions to amend the complaint, therefore, were also incorrect. On appeal, the parties agree that the proposed complaint presents an additional, distinct theory, though they disagree about the merits of that theory.

without regard to ownership.

Courts, however, have universally interpreted the phrase "any person who believes that he or she is or is likely to be damaged by such act" more narrowly. Courts have read the Act's purpose as "exclusively to protect the interests of a purely *commercial* class against unscrupulous commercial conduct," and eliminated claims brought by consumers alleging unfair competition. Colligan v. Activities Club of New York, Ltd., 442 F.2d 686, 691-94 (2d Cir. 1971) (emphasis added). With respect to commercial plaintiffs, in contrast, circuits have split on how to apply prudential standing limitations. None of the various tests employed, however, hold that only the owner of a trademark has standing. The strongest application is the categorical approach utilized by the Seventh, Ninth, and Tenth Circuits. Those courts require the commercial plaintiff bringing an unfair competition claim to be in competition with the alleged false advertiser. See, e.g., Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 873 (10th Cir. 1995); L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561, 575 (7th Cir. 1993); Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1108-09 (9th Cir. 1992). The Third, Fifth, and Eleventh Circuits, in contrast, analyze the standing of commercial plaintiffs by applying a more flexible standard. Phoenix of Broward, Inc. v. McDonald's Corp., 489 F.3d 1156, 1162-64 (11th Cir. 2007) (citing the standards for prudential standing established in Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 538-44 (1983)); see also Procter & Gamble Co. v. Amway Corp., 242 F.3d 539, 562-63

11

(5th Cir. 2001); Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 234 (3d Cir. 1998).

On at least one occasion, we have applied the strong categorical test that in order "to have standing for a Lanham Act false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." Telecom Int'l Am., Inc. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001) (alterations omitted), quoting Stanfield, 52 F.3d at 873, citing Heath, 9 F.3d at 575 & Waits, 978 F.2d at 1109. Referencing Telecom, at least one other circuit has understood us to have adopted the categorical approach. See Am. Ass'n of Orthodontists v. Yellow Book USA, Inc., 434 F.3d 1100, 1103-04 (8th Cir. 2006).

Furthermore, although Telecom is the only case in which we appear to have squarely utilized the categorical approach, we have frequently stressed the importance of competition between litigants in evaluating Lanham Act claims even if we have not explicitly *required* competition. For example, in Colligan, we cited as "succinctly stat[ing] the import of § 43(a)" a decision from the district court for the District of Columbia. Colligan, 442 F.2d at 692 n.27, citing Gold Seal Co. v. Weeks, 129 F. Supp. 928 (D.D.C. 1955), superseded on other grounds by statute, 15 U.S.C. § 1071(b)(1) (2000). That decision explained that § 43(a)

> means that wrongful diversion of trade resulting from false description of one's products invades that interest which an honest competitor has in fair business dealings . . . . In effect

> it says: you may not conduct your business in a way that unnecessarily or unfairly interferes with and injures that of another; you may not destroy the basis of genuine competition by destroying the buyer's opportunity to judge fairly between rival commodities by introducing such factors as falsely descriptive trade-marks which are capable of misinforming as to the true qualities of the competitive products.

Gold Seal, 129 F. Supp. at 940.  Similarly, Colligan also cited a concurrence by Judge Jerome Frank as "a learned discussion of the historical-legal relationship between protection of commercial interests and consumer interests under the rubric of unfair competition, which relationship comprises the background against which Congress enacted § 43(a)."  Colligan, 442 F.2d at 692 n.26.  In that concurrence, explaining the Lanham Act's focus on commercial interests rather than consumer interests, Judge Frank clarified:

> The harm, if any, is to the plaintiff, and is said to be this:  The defendant's product may be so "inferior" as to create ill-will among consumers directed against the supposed common maker of both products, with the consequence that the good will of the plaintiff, as maker of the first product, will be impaired.

Standard Brands v. Smidler, 151 F.2d 34, 42-43 (2d Cir. 1945) (Frank, J., concurring).

While stressing the importance of whether the plaintiff and defendant are in competition, our cases, with the exception of Telecom, have not treated this factor as a sine qua non of standing.  Rather, we have said that competition is a factor that strongly favors standing, not that competition is an absolute requirement for standing.  Our test for

standing has been called the "reasonable interest" approach.  Under this rubric, in order to establish standing under the Lanham Act, a plaintiff must demonstrate (1) a reasonable interest to be protected against the alleged false advertising and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising.  See Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir. 1994).  We have not *required* that litigants be in competition, but instead have viewed competition as a strong indication of why the plaintiff has a reasonable basis for believing that its interest will be damaged by the alleged false advertising.

In Ortho Pharmaceuticals, for example, we noted that although the proof required to show injury and causation varies by circumstances, "we have tended to require a *more substantial showing* where the plaintiff's products are not obviously in competition with defendant's products, or the defendant's advertisements do not draw direct comparisons between the two."  Id. (emphasis added).  In another case, assessing the likelihood of damages alleged by one shampoo company against another, we noted that the two shampoos "compete in the same market, and it is quite likely that the apparently effective suggestions of competitive superiority, if repeatedly communicated to consumers, would eventually result in loss of sales to [the appellant]."  Vidal Sassoon, Inc. v. Bristol-Myers Co., 661 F.2d 272, 278 (2d Cir. 1981).  In a case in which Johnson & Johnson alleged that the sale of a hair depilatory product with baby oil had engaged in false advertising by suggesting to consumers that the depilatory could replace Johnson & Johnson's baby oil,

14

we held that the correct standard for proof of damages under the Lanham Act is "whether it is likely that [the defendant's] advertising has caused or will cause a loss of Johnson sales." Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 190 (2d Cir. 1980).

In any event, here Famous Horse and Appellees *are* in essence competitors. We therefore need not address whether Telecom indicates a shift in our approach to unfair competition claims: Famous Horse has standing whether we apply the reasonable interest test or the stronger categorical requirement. Famous Horse, which sells genuine Rocawear jeans, is clearly in competition with Appellees, who sell counterfeit Rocawear jeans. The injuries alleged by Famous Horse – lost sales to the lower-priced counterfeit jeans – constitute the competitive injury required for Lanham Act standing under Telecom. See 280 F.3d at 197. Although Famous Horse sells at retail, and Appellees primarily sell at wholesale, the goods they sell are in direct competition in the marketplace, and Appellees' products are supplied to retailers in direct competition with Famous Horse. Cf. Info. Res., Inc. v. Dun & Bradstreet, 294 F.3d 447, 450 (2d Cir. 2002) (noting in antitrust context that dealers have standing to allege anticompetitive activity by retailer even though they do not compete at same market level); Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 189 (2d Cir. 1992) (holding that sports jacket dealer's requirement that buyers not resell jackets at wholesale "impedes the ability of authorized retailers . . . to enter the wholesale market and thereby reduces the aggregate number of dealers – retail and wholesale – competing to sell Starter jackets" and that

15

"[r]estrictions on intrabrand competition invariably reduce competition"). In this setting, it is clear that Famous Horse alleges that Appellees' conduct directly undermines its competitive standing in the marketplace.

We thus turn to application of the reasonable interest approach and ask whether Famous Horse sufficiently alleged "a reasonable interest to be protected against the advertiser's false or misleading claims." Ortho Pharm., 32 F.3d at 694 (internal quotation marks omitted). Famous Horse asserts a specific interest because it has a particular market niche that is especially likely to be harmed by counterfeit sales. The V.I.M. chain of stores, according to Famous Horse, is known for selling genuine name-brand clothing at very low prices. Famous Horse thus alleges that it was uniquely affected by Appellees' sale of counterfeit Rocawear jeans in two ways: first, its reputation as a discount store was harmed because consumers believed that it sold Rocawear jeans at inflated prices compared to counterfeit jeans supplied by Appellees; and second, consumers who learn of counterfeit Rocawear jeans on the market will believe that V.I.M. similarly peddles counterfeit clothes.

We faced a similar Lanham Act claim in PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120 (2d Cir. 1984). In that case, a group of corporations that held royalty interests in selected recordings of the guitarist Jimi Hendrix sued Audiofidelity, which they alleged was falsely advertising recordings as featuring Hendrix when Hendrix actually appeared only as a background performer. Id. at 121-22. We held:

16

In the present case plaintiffs claim to have straight-forward commercial interests that could reasonably be affected by misleadingly packaged Jimi Hendrix recordings. Plaintiffs are in the business of making money by acquiring royalty interests in the sale of record albums and singles. Their interests in promoting sales are direct, and hardly less immediate than the interests of those who actually distribute the records. Every time a record in which they have a royalty interest is sold, they earn money; every time a sale is lost to a competitor, they lose a potential profit. Moreover, if consumers buy defendants' Jimi Hendrix albums and find that they have, in fact, been misled, then it is not unlikely that they will be reluctant to buy other Hendrix recordings, including those in which plaintiffs have their interests. Because of their royalty interests, plaintiffs have a pecuniary stake in sales of Hendrix recordings that makes them genuine business competitors of the defendants.

We stress that there is nothing novel about awarding standing under the Lanham Act to one who has a direct pecuniary interest at stake.

Id. at 125.

Here, Famous Horse alleged both lost sales and a unique harm to the specific reputation of V.I.M. stores. This allegation of unique harm makes them similar to the PPX plaintiffs. Like those plaintiffs, who claimed that defendants undermined their business by making misleading statements about the genuineness of their Hendrix recordings, Famous Horse alleges that it has a particular interest in selling genuine Rocawear jeans at a discount price point, and in customers' perception that its jeans, though discounted, are indeed genuine. The facts that the defendants' alleged misstatements concern Hendrix, in the one case, and Rocawear, in the other, rather than

17

the plaintiffs, and that any misleading statements about the origins of the products sold do not attempt to associate those products with the plaintiffs, do not undermine the plaintiffs' claims that defendants' presentation of counterfeit goods undermines the plaintiffs' ability to market genuine products. We thus hold that Famous Horse has alleged a reasonable interest to be protected against Appellees' alleged false advertising as well as a reasonable basis for believing that this interest will be damaged by the alleged false advertising, and has properly stated a false advertising claim under the Lanham Act.[3]

We note that this claim may well be difficult to prove at trial. While it may be plausible that Famous Horse can in principle be harmed by counterfeiters of Rocawear products, proof of actual losses will be difficult given that plaintiff's V.I.M. stores operate in a large market that includes luxury retailers selling name brands at full price,

---

[3] The dissent undertakes to decide whether Famous Horse has a reasonable interest to be protected from Appellees' allegedly unlawful conduct by applying a five-part test adapted from the Third Circuit's decision in Conte Brothers. We believe this approach unnecessarily complicates the inquiry, without clarifying the result; we would reach the same result under the Conte Brothers standard, which essentially demands the same balancing as our more flexible approach. By selling counterfeit goods at a below-market price to Famous Horse's direct competitors, Appellees are alleged to have threatened Famous Horse's bottom line and damaged its reputation as a discount purveyor of name-brand jeans. As the dissent concedes, these are the very harms "the Lanham Act is designed to remedy." Dissenting Op. at 29. The mere fact that one party is a retailer and the other a wholesaler changes little. Cf. Citicorp v. Interbank Card Ass'n, 478 F. Supp. 756, 763-64 (S.D.N.Y. 1979) (finding standing in licensor to challenge anti-competitive practices of credit card issuer). As a result, we find no reason to bar Famous Horse – the only party to have demonstrated the necessary interest, initiative, and resources to do so – from bringing suit to remedy these harms.

discounters of various stripes, and numerous counterfeiters selling fake versions of name brands. The alleged harm to Famous Horse depends upon the idea that its sales are specifically affected by Appellees' behavior. Famous Horse has alleged sufficiently plausible claims, however, to overcome a motion to dismiss under Rule 12(b)(6).

**IV. Additional Issues**

Famous Horse's First Amended Complaint, filed in February 2008, added Florentin Fashions, Inc. and NJ French Kiss, Inc. as defendants (the "New Jersey defendants"). The district court dismissed the claims against the New Jersey defendants sua sponte for failure of service. That dismissal was error. "[N]otice to the plaintiff must be given prior to a sua sponte dismissal" for failure to serve process. Thompson v. Maldonado, 309 F.3d 107, 110 (2d Cir. 2002). Had the district court given such notice, Famous Horse would have had the opportunity to present proof of service on the New Jersey defendants, which it purports to have provided in the record on review. We thus vacate the district court's dismissal of the New Jersey defendants to permit the district court to evaluate this evidence.

Finally, the district court dismissed Famous Horse's various state law claims without prejudice, declining to exercise pendent jurisdiction over those claims after the dismissal of the federal causes of action. Because we reverse the district court's dismissal of Famous Horse's Lanham Act claims, we reinstate Famous Horse's remaining state law claims as well. See Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.,

19

380 F.3d 126, 133 n.2 ("Since we reinstate the Lanham Act claims, we vacate the dismissal of Meridien's state law claims.").

**V.  Conclusion**

For the foregoing reasons, the judgment of the district court is VACATED, and the case remanded for further proceedings consistent with this opinion.

LIVINGSTON, *Circuit Judge,* concurring in part and dissenting in part:

I join in Parts I, II, and IV of the majority opinion, including Part II's analysis of Famous Horse's false endorsement claims under sections 32 and 43 of the Lanham Act. I disagree, however, with the majority's conclusion that Famous Horse's additional claim under Section 43(a), based on Appellees' asserted sale of counterfeit jeans bearing the Rocawear label, alleged a "reasonable interest" to be protected under the Lanham Act. I believe that this claim is best assessed under the prudential standing framework first employed in the trademark context by the Third Circuit in *Conte Brothers Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998), and since adopted by several other circuits for use in assessing standing in Lanham Act cases, *see Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156 (11th Cir. 2007); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001). Use of the *Conte Brothers* framework is consistent with this Court's precedent requiring a Lanham Act plaintiff to allege a "reasonable interest" to be protected in order to have standing, and in my view provides a reviewing court with useful guidance in assessing whether such a reasonable interest has been alleged. While I do not read the majority's analysis in Part III as foreclosing adoption of the *Conte Brothers* test by this Court in a future case, I find that application of it here leads me to a different conclusion as to whether the interest alleged in this case constitutes a "reasonable interest" under our past precedents sufficient for standing under the Lanham Act. Accordingly, I respectfully dissent from Part III of the majority's opinion.

* * *

Section 43(a) of the Lanham Act provides, in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). Subsection (A) protects against the "infringement of even unregistered marks, names, and trade dress" (sometimes described as a prohibition of "false association") while subsection (B) prohibits "false advertising." *See Telecom Int'l America, Ltd. v. AT&T Corp.*, 280 F.3d 175, 196-97 (2d Cir. 2001) (using "false association" and "false advertising"

22

descriptors); *see also Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991) (characterizing Section 43(a) as involving "product infringement" and "false advertising" claims). As indicated, section 43(a) writ large gives "any person who believes that he or she is likely to be damaged" the right to sue, and the standing provision does not distinguish between the two subsections.

As the majority observes, courts have universally construed section 43's conferral of standing to "any person who believes that he or she is or is likely to be damaged" more narrowly than the words "any person" in isolation might suggest. *See, e.g.*, *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 691-92 (2d Cir. 1971) (understanding the Lanham Act as "protect[ing] the interests of a purely commercial class against unscrupulous commercial conduct," *id.* at 692, and denying standing under the Act to purportedly injured consumers). With the exception of a single outlying case, this Court has repeatedly indicated that the test for standing in Lanham Act false advertising cases is whether the plaintiff has both "(1) a reasonable interest to be protected against [the defendant's] false or misleading claims, and (2) a reasonable basis for believing that this interest is likely to be damaged by the [defendant's] false or misleading advertising." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 169 (2d Cir. 2007) (internal quotation marks omitted); *accord Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship L.P.*, 380 F.3d 126, 130 (2d Cir. 2004)*; Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 130 (2d Cir. 2000), *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir. 1997); *Ortho Pharm. Corp. v. Cosprophar, Inc.*,

32 F.3d 690, 694 (2d Cir. 1994); *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir. 1984); *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980).[4]

In *Conte Brothers*, the Third Circuit considered the question whether the plaintiff retailers of motor oil had standing to bring suit against the manufacturer of a product that competed with those sold by the retailers. Specifically, the retailers alleged that advertisements by the manufacturer, Quaker State, contained false and misleading statements regarding the qualities of its Slick 50 engine additive, resulting in lost motor oil sales by the retailers. *Conte Bros.*, 165 F.3d at 223-24. In considering what test for prudential standing applied in the case, the court first observed that (as in this Circuit) Third Circuit precedent

---

[4] In *Telecom International*, 280 F.3d at 197, the Court, without discussion, cited the standard employed by the Seventh, Ninth, and Tenth Circuits rather than that described by our prior precedent. The test employed by those three circuits requires that the plaintiff "be a competitor of the defendant and allege a competitive injury" in false advertising cases, as distinguished from false association cases. *See id.* (citing *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 873 (10th Cir. 1995); *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992)). As the majority notes, our case law otherwise indicates that while competition between the plaintiff and defendant is significant to a determination of whether a plaintiff has a "reasonable interest" conferring standing, *see, e.g.*, *Ortho Pharm.*, 32 F.3d at 694 ("[W]e have tended to require a more substantial showing where the plaintiff's products are not obviously in competition with defendant's products, or the defendant's advertisements do not draw direct comparisons between the two."), competition is not the "sine qua non of standing" in this Circuit, Maj. Op. at 14. *See also Ortho Pharm.*, 32 F.3d at 694 ("We have held that, while a plaintiff must show more than a subjective belief that it will be damaged, it need not demonstrate that it is in direct competition with the defendant or that it has definitely lost sales because of the defendant's advertisements."); *Berni v. Int'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 648 (noting similarly that "a section 43 plaintiff need not be a direct competitor" of the defendant); *accord Havana Club Holding*, 203 F.3d at 130.

24

required a plaintiff to demonstrate a "reasonable interest to be protected" in order to have standing to bring a Lanham Act false advertising claim, though it noted that since adopting this standard, the circuit's "subsequent decisions ha[d] carried forward this prudential 'reasonable interest' requirement [while] grappl[ing] with defining the term with greater precision." *Id.* at 230-31.

In endeavoring to give its reasonable interest test greater structure, the *Conte Brothers* court found valuable guidance in the test for antitrust standing described by the Supreme Court in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983).[5] It noted that *Associated General* set forth five factors for a court to consider in assessing whether prudential standing requirements[6] had been satisfied:

---

[5] Before adopting the test from *Associated General*, the *Conte Brothers* court expressly rejected the Ninth Circuit's approach to standing in Section 43(a) cases – which provided separate and distinct standing tests for the subsection's two prongs – observing, *inter alia*, that there was no textual support for differential treatment of false association claims brought under section 43(a)(1)(A) and false advertising claims brought under section 43(a)(1)(B). *Conte Bros.*, 165 F.3d at 232-33.

I note that it is not clear to me whether Famous Horse's unfair competition claim in this case is properly considered to be a false advertising claim, as the majority assumes, or a false association claim. Like the Third Circuit in *Conte Brothers*, however, I see no reason to distinguish between subsections 43(a)(1)(A) and (B) for standing purposes, and so the analysis presented here is unaffected by the distinction.

[6] The determination whether prudential standing limits apply at all to a given statute ordinarily first entails an inquiry into whether Congress has expressly rejected such limitations in enacting the statute. *See, e.g.*, *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 186 (2d Cir. 2001) (noting that "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules" (internal quotation marks omitted)). Given that this Circuit has already determined that Lanham Act standing is prudentially limited to those with a "reasonable interest to be protected," I will not undertake this separate inquiry here, and

25

(1) The nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress . . . ?

(2) The directness or indirectness of the asserted injury.

(3) The proximity or remoteness of the party to the alleged injurious conduct.

(4) The speculativeness of the damages claim.

(5) The risk of duplicative damages or complexity in apportioning damages.

*Conte Bros.*, 165 F.3d at 233 (citing *Associated General*, 459 U.S. at 538, 540, 542, 543-44) (internal quotation marks and citations omitted).

Applying these factors to the case before it, the court held that the plaintiffs had failed to meet the requirements of standing. It had already rejected the notion that, under the Lanham Act, "*only* direct competitors or their surrogates have standing." *Id.* at 231 (emphasis in original); *see also id.* at 231-32. Noting then that "there may be circumstances in which a non-competitor may have standing to sue," it emphasized that in this case, while the plaintiffs had alleged a commercial injury, their injury was not a competitive harm – that is, their ability to compete had not been hindered, as would have been the case if the defendant's actions had tarnished their professional reputation or otherwise damaged the good will they enjoyed from customers – and the harm suffered was therefore not of the kind Congress had sought to redress. *Id.* at 234 (noting that "the type of injury suffered by

note only that I find the reasoning of *Conte Brothers* on this point to be persuasive as well. *See* 165 F.3d at 227-30.

Appellants – loss of sales at the retail level . . . – does not impact the Appellants' *ability to compete*" (emphasis added)). Moreover, the plaintiffs were relatively remote from the alleged harmful conduct, and "the 'existence of an identifiable class of persons' – manufacturers of competing products – 'whose self-interest would normally motivate them to vindicate the public interest . . . diminishes the justification of allowing a more remote party . . . to perform the office of a private attorney general.'" *Id.* (alteration in original) (quoting *Associated General*, 459 U.S. at 542). The court considered that the damages suffered by the plaintiffs, "were, if not speculative, then certainly avoidable," since the plaintiffs themselves could have sold Slick 50, and so "the interest that plaintiffs had in preserving the reputation of motor oil . . . appear[ed] to be a theoretical, rather than actual economic interest." *Id.* at 235. "Finally, recognizing the right of every potentially injured party in the distribution chain to bring a private damages action would subject defendant firms to multiple liability for the same conduct and would result in administratively complex damages proceedings." *Id.*

If every retailer had a cause of action for false advertising regardless of the amount in controversy, regardless of any impact on the retailer's ability to compete, regardless of any impact on the retailer's good will or reputation, and regardless of the remote nature of the injury suffered, the impact on the federal courts could be significant. For example, under Appellants' theory, every corner grocer in America alleging that his sales of one brand of chocolate bars

have fallen could bring a federal action against the manufacturer of another brand for falsely representing the chocolate content of its product. Such an action hardly seems befitting of a statute that was designed primarily to resurrect the federal tort of unfair competition after it was consigned to the post-*Erie* ashheap.

*Id.*

As noted above, two other circuits have found the analysis in *Conte Brothers* to be compelling, *see Phoenix of Broward*, 489 F.3d at 1167; *Procter & Gamble*, 242 F.3d at 562, and as the court in *Conte Brothers* itself indicated, the approach has the endorsement of two prominent commentators, *see* 165 F.3d at 233 (citing 4 McCarthy on Trademarks § 27.32 n.1; Restatement (Third) Unfair Competition § 3, cmt. f (1995)).  I also believe *Conte Brothers* to be well-reasoned, and think that use of its framework would enable this Circuit, like the Third, Fifth, and Eleventh, to "defin[e] the term [reasonable interest] with greater precision." *Conte Bros.*, 165 F.3d at 231.  Here, consideration of the five factors leads me to disagree with the majority that Famous Horse has standing to assert a Lanham Act claim for unfair competition.

First, as to the nature of the alleged injury, Famous Horse in this case has alleged both commercial injury – in the form of lost sales as the result of the sale of counterfeit jeans by its competitors, supplied to them by the Appellees – and competitive harm – in that V.I.M.'s reputation as the place to go for discount genuine designer jeans is undercut by the availability

of less expensive and seemingly genuine designer jeans from those competitors. These allegations are sufficient to put the alleged injury squarely within the category of harm that the Lanham Act is designed to remedy, and thus the first *Conte Brothers* factor favors standing.[7]

The inquiry under the second *Conte Brothers* factor, which considers the relative directness or indirectness of the asserted injury, dovetails nicely with this Court's existing

---

[7] I note that unlike the Third Circuit, this Circuit's precedent has not focused as strongly on whether a plaintiff is alleged to have suffered a competitive harm in assessing standing under the Lanham Act. *See, e.g.*, *Punchgini*, 482 F.3d at 169-70 (indicating that "[t]he 'reasonable interest' prong of [this Circuit's] test includes commercial interests, direct pecuniary interests, and even a future potential for a commercial *or* competitive injury" (emphasis added)); *Berni*, 838 F.2d at 648 (". . . [S]tanding to bring a section 43 claim requires the potential for a commercial *or* competitive injury." (emphasis added)). Given that this Circuit requires only that a plaintiff allege an actual or potential commercial harm, the "nature of the alleged injury" in this case is *a fortiori* within what we have determined to be the category of harms that Congress sought to redress under the Lanham Act.

I see no difficulty in adopting the factors of the *Conte Brothers* test to guide our prudential standing inquiry, while differing with the Third Circuit on the precise requirements of one or more of the factors. In declining to require a competitive injury with respect to the first factor, we would join the Eleventh Circuit:

> [Defendant] . . . contends that because [plaintiff] has neither alleged nor suggested that its reputation was adversely affected by [defendant's] advertising, this lack of reputational injury counsels against prudential standing. . . . [W]e cannot say that the lack of alleged reputational injury, in and of itself, directs us to conclude that [plaintiff] has failed to allege the type of injury the Lanham Act was intended to redress. . . . [T]he Lanham Act is not only designed to protect against unfair erosion of a competitor's reputation, it is also designed to protect commercial interests [that] have been harmed by a competitor's false advertising.

*Phoenix of Broward*, 489 F.3d at 1168-69 (internal quotation marks omitted) (final alteration in original).

precedent, which holds, as the majority indicates, that direct competition is not a requirement for Lanham Act standing, but that "we have tended to require a more substantial showing where the plaintiff's products are not obviously in competition with defendant's products." *Ortho Pharm.*, 32 F.3d at 694. The majority states that in this case "Famous Horse and Appellees *are* in essence competitors." Maj. Op. at 15. However, as the majority recognizes, Famous Horse sells its jeans at retail, whereas the Appellees sell primarily at the wholesale level. Certainly, it is possible for parties operating at different market levels to nevertheless be in competition, as is reflected in the antitrust context. *E.g.*, *Information Res., Inc. v. Dun & Bradstreet Corp.*, 294 F.3d 447, 450 (2d Cir. 2002) (citing a hypothetical situation discussed in a leading antitrust treatise in which one manufacturer engages in anti-competitive conduct against another manufacturer through the actions of retail dealers that it controlled in its vertically integrated business structure). However, in this case there is little reason to think that Famous Horse and Appellees are "competitors in every relevant economic sense." *Id.* (quoting II Phillip E. Areeda et al., Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 348f1, at 404 (2d ed.2000)). Indeed, making such a claim may be particularly difficult here where Famous Horse brings a claim against Appellees that they sold counterfeit jeans *to Famous Horse* among other retailers, and where Famous Horse's other Lanham Act claim alleges that Appellees asserted to other retailers that Famous Horse was a "satisfied customer" of their allegedly counterfeit jeans. *See* Maj. Op. at 6

Where a plaintiff and defendant are in competition, the defendant's misrepresentations

as to the qualities of their products represent the archetypal form of unfair competition, with a potential for harm that is both obvious and direct. *See Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 460 (5th Cir. 2001) (indicating that the second *Conte Brothers* factor favors standing when "one competitor directly injur[es] another by making false statements about its own goods and thus influenc[es] customers to buy its product instead of the competitor's product" (citing *Procter & Gamble*, 242 F.3d at 563)). Given the lack of a direct competitive relationship here, however, the alleged injury is both significantly less obvious and more indirect. According to Appellant's theory, Appellees allegedly harmed Famous Horse not by misrepresenting the nature of their allegedly counterfeit jeans to customers who would otherwise have purchased from Appellant, but by inducing *third-party retailers* to purchase and sell Appellees' counterfeit jeans as if they were genuine examples of the Rocawear brand and to do so at a lower price than Appellant charges for its genuine product, resulting in the lost business and reputational effects Famous Horse claims. Because the asserted injury here is indirect, I conclude that the second factor in the *Conte* analysis weighs against Appellant's position.

With respect to the third factor, Famous Horse's proximity to the allegedly injurious conduct, it is clear that in this case there is a party more proximately affected than Famous Horse by the Appellees' alleged dealing in counterfeit Rocawear jeans – namely, the owner of the Rocawear label – whose self-interest will lead it to respond to unfair competition taking the form of misuse of its trademark. Indeed, Famous Horse's Amended Complaint alleges

31

that it was initially alerted to the counterfeit nature of the Appellees' products when contacted by Rocawear's attorneys. I am unpersuaded, moreover, by the majority's suggestion that Famous Horse is similarly situated to the plaintiffs we found to have standing in *PPX Enterprises*, who owned a legal interest entitling them to royalties from Jimi Hendrix recordings, and who consequently could claim they were harmed by *any* sale of recordings that were falsely attributed to the artist, wherever it occurred. *See* 746 F.2d. at 125 (observing that "[e]very time a record in which [plaintiffs] have a royalty interest is sold, they earn money; every time a sale is lost to a competitor, they lose potential profit"). Plaintiffs here cannot claim an equivalent level of interest with respect to Rocawear jeans in general. The "unique harm" they claim is a reputation with respect to the quality of their products in general and the prices charged, one that in theory a number of retailers could claim to have in some form and one that is not directly connected to the conduct that is allegedly violative of the Lanham Act. The plaintiffs in *PPX Enterprises* accordingly were significantly more proximate to the alleged injurious conduct in that case than Famous Horse is here. I conclude that the third *Conte Brothers* factor disfavors standing.

The fourth factor considers the speculativeness of a plaintiff's damages claim. The majority acknowledges that "VIM stores operate in a large market" and that "the alleged harm to Famous Horse depends upon the idea that its sales are specifically affected by Appellees' behavior," an effect that may be difficult to prove. Maj. Op. at 19. As a previous case applying the *Conte Brothers* analysis to Lanham Act standing has recognized, the presence

32

of many competitors in a given market may render the alleged damages caused by a particular defendant's actions more speculative. *See Phoenix of Broward*, 489 F.3d at 1171 (finding alleged damages speculative even when the defendant and plaintiff were direct competitors). It is true that this case does not, as in *Conte Brothers*, involve a claim for damages that "if not speculative, were certainly avoidable." 165 F.3d at 235. Unlike the motor oil retailers in *Conte Brothers*, who could have sold Slick 50 themselves and thereby avoided any loss of sales to that competing product, *see id.*, Famous Horse could not properly have responded to the sale of counterfeit jeans by its competitors by joining them in the counterfeit trade. However, Famous Horse's second theory of injury for this claim – that it will be harmed because the ability of other competitors to sell counterfeit jeans advertised as genuine at lower prices than the genuine jeans sold by Famous Horse will give it a reputation for inflated prices – is certainly both highly speculative and indeed in some tension with other theories of harm advanced by Famous Horse at different stages of the litigation. Thus, I conclude that the speculativeness of damages weighs against Famous Horse as well, if perhaps not to the degree found in *Conte Brothers*.

The final *Conte Brothers* factor, the risk of duplicative or complex damages, also weighs against Appellants. The market affected in this case is, as previously noted, a "large market that includes luxury retailers selling name brands at full price [and] discounters of various stripes," Maj. Op. at 18, and all of these actors, plus Rocawear, and perhaps even the makers of competing brands of designer jeans, might plausibly claim that the Appellees'

33

counterfeiting causes them commercial injury. Beyond lost sales that it would seem all such market participants might be able to claim, Famous Horse claims that its stores' "alleged reputation as a discount purveyor of genuine brand-name jeans," Maj. Op. at 10, was harmed. However, other discounters, and perhaps even luxury retailers, might reasonably claim that counterfeiting causes them competitive harm, in that the sale of counterfeits make their jeans seem overpriced, and thereby damages their reputations. The threat of complex or duplicative damages is somewhat attenuated in this case, which involves a local rather than a national market, and a theory of competitive injury that turns upon the plaintiff's purportedly unique market position. *See Phoenix of Broward*, 489 F.3d at 1172 (noting that in addition to "the plaintiff's position in the distribution chain relative to the defendant," courts considering the fifth *Conte Brothers* factor "also have assessed the risk of duplicative damages by examining the number of potential claimants in the same position in the distribution chain as the plaintiff" (citing *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 184-85 (3d Cir. 2001); *Procter & Gamble*, 242 F.3d at 564)). Nevertheless, permitting standing here does raise a similar specter of granting standing to every retailer with a bare claim of commercial injury that the Third Circuit in *Conte Brothers* found intolerable, *see* 165 F.3d at 235, only now with the addition of a highly speculative claim as to harm suffered due to a unique position in the market.

The majority finds a "reasonable interest" in this case based on the alleged "lost sales and a unique harm to the specific reputation of V.I.M. stores." Maj. Op. at 18. Although the

34

*Conte Brothers* factors do not uniformly weigh against standing, making the question of whether a "reasonable interest" is shown in this case a close one, I conclude that, on balance, they emphasize the tenuousness of Famous Horse's Lanham Act claim for unfair competition and support a conclusion that Famous Horse does not have standing to bring it. The competitive relationship between Famous Horse and Appellees is at best unclear, although Famous Horse does allege injuries from the Appellees' actions that are both commercial and competitive in nature. Even if the relationship could be termed "nominally competitive," however, again following *Conte Brothers*, I find decisive "the existence of more directly injured parties, the tenuousness of Appellants' damages claims, and the possibility of multiple recoveries." *Conte Bros.*, 165 F.3d at 225. Here, the owner of the Rocawear label is significantly more proximate than Famous Horse to the injurious conduct alleged, the claim that Famous Horse has been damaged by the introduction of counterfeit jeans into the local market in which it operates is highly speculative with respect to reputation and potentially still quite speculative in the context of the claim for lost sales, and finally the risk of duplicative and complex damages again exists here, particularly with respect to the claim for lost sales. Ultimately, I do not think the principles of prudential standing counsel hearing the claim of a party whose only distinguishing feature from any other retailer of a counterfeited good is a speculative one as to harm to its purported reputation.

For the foregoing reasons, I conclude that Famous Horse does not have standing to bring its unfair competition claim, and dissent from Part III of the Court's opinion on these

grounds.